**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**



ANTHONY HART,

    Plaintiff,

v.               Case No:  16-cv-10253
                  Honorable: Denise Page Hood
HILLSDALE COUNTY, a Municipal   Mag. Judge: Elizabeth A. Stafford
Corporation; HILLSDALE COUNTY
AGENTS CHRISTINE WAHTOLA, KWINN
LEVA, LT. TIMOTHY PARKER; CITY OF
HILLSDALE and OFFICERS SHELBY
RATHBUN and OFFICER TODD HOLTZ;
MICHIGAN STATE POLICE ANALYSTS
MELISSA MARINOFF AND MARCI
KELLEY, in their individual capacities;
WATCH SYSTEMS, L.L.C., a Louisiana
Corporation; and ATTORNEY KIMBERLEY
BURGER, and PARKER, HAYES, &
LOVINGER P.C. all jointly and severally,
      Defendants.
_____/

GOODMAN & HURWITZ, P.C.
William H. Goodman (P14173)
Julie H. Hurwitz (P34720)
Kathryn Bruner James (P71374)
1394 E. Jefferson Avenue
Detroit, Michigan 48207
(313) 567-6170/Fax: (313) 567-4827
mail@goodmanhurwitz.com

STEVEN T. BUDAJ, P.C.
Steven T. Budaj (P30154)
65 Cadillac Square, Suite 2915
Detroit, MI 48226
(313) 963-9330
stbudaj@counsel.cc

SOMMERS SCHWARTZ, P.C.
David M. Black (P25047)
One Towne Square, Suite 1700
Southfield, MI 48076
(248) 355-0300
dblack@sommerspc.com

*Attorneys for Plaintiff*

MATTA BLAIR PLC
Roger A. Smith (P27722)
39572 Woodward Ave ., Suite 200
Bloomfield Hills, MI 48304-5005
(248) 593-6100 /Fax: (248) 593-6116
rsmith@mattablair.com
*Attorneys for Defendants City of*
*Hillsdale, Officers Rathbun & Holtz*

Erik A. Grill (P64713)
Dana Wood (P71955)
Assistant Attorneys General
P.O. Box 30736
Lansing, Michigan 48909
(517)373-6434
grille@michigan.gov
woodd9@michigan.gov
*Attorneys for Defendants Kelley and*
*Marinoff*

COLLINS EINHORN FARRELL PC
Michael J. Sullivan (P35599)
Colleen H. Burke (P63857)
4000 Town Center, 9th Floor
Southfield, MI 48075
(248) 355-4141
Michael.Sullivan@CEFlawyers.com
Colleen.Burke@CEFlawyers.com
*Attorneys for K. Burger and Parker,*
*Hayes & Lovinger, P.C.*

_____/

## SECOND AMENDED COMPLAINT and DEMAND FOR JURY TRIAL

Now comes Plaintiff ANTHONY HART, by and through his attorneys, Steven T. Budaj, P.C., Goodman & Hurwitz, P.C., and Sommers Schwartz, P.C. and, for his Second Amended Complaint, alleges the following:

## PRELIMINARY STATEMENT

1.     This is a civil rights action in which Plaintiff ANTHONY HART (hereafter "HART") seeks relief for injuries stemming from Defendants' violations of his rights, privileges and immunities secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution and laws of the State of Michigan.

2.     Defendants herein caused HART, on at least two occasions, to be convicted of failure to register as a sex offender, felonies that, at the time of each of his convictions, did not even exist, as applied to him, due to his age and his juvenile offender status. The latter conviction of the two caused HART to be incarcerated for 19 months in Jackson State Prison of Southern Michigan in Jackson, Michigan.

3.     Defendants CHRISTINE WAHTOLA, KWINN LEVA, TIMOTHY PARKER, SHELBY RATHBUN, TODD HOLTZ, MELISSA MARINOFF, and MARCI KELLEY (hereinafter referred to as "LAW ENFORCEMENT DEFENDANTS"),  deliberately, recklessly, and unreasonably caused HART to be

arrested and maliciously prosecuted without probable and/or reasonable cause for either the arrest or the prosecution, resulting in HART'S conviction and incarceration, in violation of HART's constitutional rights.

4.     The policies and practices of Municipal Defendants CITY OF HILLSDALE (hereafter "CITY") and HILLSDALE COUNTY (hereafter "COUNTY") resulted in inadequate training and hiring, and affirmatively authorizing Defendants WAHTOLA, LEVA, PARKER, RATHBUN, and HOLTZ, to falsely arrest and maliciously prosecute HART, resulting in the violation of HART's constitutional rights.

5.     Defendant WATCH SYSTEMS L.L.C., (hereafter "WATCH SYSTEMS"), a Louisiana Corporation, under contract with the State of Michigan through the Michigan State Police (hereinafter MSP), negligently designed, created, and maintained faulty, inaccurate and unreliable sex offender registry database software that resulted in the defamation, false arrest and malicious prosecution of HART.

6.     Defendants KIMBERLEY BURGER, and the law firm PARKER, HAYES & LOVINGER P.C. (hereafter "FIRM"), committed legal malpractice when they advised HART, on two separate occasions, to plead guilty to a crime that did not exist as applied to him at the time of his 2013 and 2014 guilty pleas. Defendant FIRM failed to advise HART that it was legally impossible for him to

be guilty of the alleged charged crimes and, as a consequence, that he should not plead guilty.

7.     HART seeks compensatory and punitive damages, declaratory relief, an award of attorneys' fees and costs, and any such additional relief as the Court deems just and proper.

## JURISDICTION

8.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343(3) and (4), as this action seeks redress for the violation of HART's federal constitutional and civil rights.

9.     HART's claims for declaratory relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

10.     HART further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

## VENUE

11.     Venue is proper in the United States District Court for the Eastern District of Michigan, pursuant to 28 U.S.C. § 1391(b)(2), in that events giving rise to HART's claims, in particular, his wrongful and unlawful incarceration in the

State Prison for Southern Michigan in Jackson, Michigan, occurred in this judicial district.

## JURY DEMAND

**12.**     HART demands a trial by jury in this action on each and every one of his claims.

## PARTIES

**13.**     Plaintiff HART is a citizen of the United States and, at all times relevant herein, was a resident of the City of Hillsdale, Hillsdale County, State of Michigan.

**14.**     Defendant CITY is a municipal corporation, authorized under and created by the laws of the State of Michigan.  It is authorized by law to maintain and operate the Hillsdale City Police Department.  CITY establishes, promulgates, and implements the policies of the Hillsdale Police Department with regard to the Department's operations, as well as its hiring, training, supervision, and discipline of the employees of said department.

**15.**     Defendant COUNTY is a municipal corporation, authorized under and created by the laws of the State of Michigan.  It is authorized by law to maintain and operate a Sheriff's Department. COUNTY establishes, promulgates, and implements the policies of the Hillsdale County Sheriff's Department with regard

to its operations, as well as its hiring, training, supervision, and discipline of the employees of said department.

16.     Defendants CHRISTINE WAHTOLA, KWINN LEVA, and LT. TIMOTHY PARKER were at all times relevant herein employed by Defendant COUNTY as agents of the Hillsdale County Sheriff's Department.

17.     At all times relevant herein, WAHTOLA, LEVA, and PARKER acted within the scope of their employment with COUNTY.

18.     At all times relevant herein, WAHTOLA, LEVA, and PARKER acted pursuant to the customs, policies and practices of COUNTY.

19.     Defendants SHELBY RATHBUN and TODD HOLTZ, were at all times relevant herein employed by Defendant CITY as officers with the Hillsdale Police Department.

20.     At all times relevant herein, RATHBUN and HOLTZ acted within the scope of their employment with CITY.

21.     At all times relevant herein, RATHBUN and HOLTZ acted pursuant to the policies and practices of CITY.

22.     Defendants, MSP Custodians of the Michigan Sex Offender Registry, MARCI KELLEY and MELISSA MARINOFF were at all times relevant herein employed by the MSP, and were required to maintain the Sex Offenders Registry (hereafter "SOR" or "registry") pursuant to Michigan Law, specifically MCL §

28.728 so that it was reasonably accurate and reliable and likely not to result in the arrest and/or criminal prosecution of persons who were not properly and/or appropriately listed.

23.   At all times relevant herein, KELLEY and MARINOFF were employees and agents of the MSP, acting under color of law and pursuant to their authority.

24.   At all times relevant herein, KELLEY and MARINOFF acted within the scope of their employment with the MSP.

25.   At all times relevant herein, the individual law enforcement defendants named above (collectively referred to as "LAW ENDFORCEMENT DEFENDANTS") violated rights of HART that were clearly established under the Constitution of the United States, in particular under the Fourth and Fourteenth Amendments, to be free from unreasonable seizures and, as such, clearly known to a reasonable law enforcement officer and/or public official, acting under similar circumstances.

26.   Defendant WATCH SYSTEMS L.L.C. is a private technology vendor corporation, incorporated in the State of Louisiana, with its offices in Covington, Louisiana, that has contracted with the State of Michigan through the MSP, since at least 2013, to accurately and reliably provide and maintain sex offender registry

database software, under color of law, consistent with the duties of the MSP

Department under MCL § 28.728.

27.     As such, at all times relevant herein, WATCH SYSTEMS, paid by the

State of Michigan, jointly participated with state and/or local officials, acting under

the color of law, for the purpose of performing the governmental function of

creating and maintaining the State of Michigan's SOR, pursuant to the Sex

Offender Registration Act (SORA). As a result, WATCH SYSTEMS placed

burdens and liabilities on persons, in particular herein, on HART, which carried the

potential for arrest and prosecution, without reasonable or probable cause.

28.     Defendant KIMBERLEY BURGER, at all times relevant, was an

employee and/or agent of Defendant FIRM; she is and was, at all times relevant, an

Attorney at Law, licensed to practice in the courts of the State of Michigan, and

was appointed to represent HART in the below-referenced SORA criminal cases.

29.     Defendant BURGER, at all times relevant herein, individually and as

an employee and/or agent of Defendant FIRM, is and was a criminal defense

attorney, admitted to practice law in the State of Michigan, with her and FIRM's

principal offices and conducting business in the City of Hillsdale, Michigan.

These parties shall be collectively referred to as the "LAWYER DEFENDANTS."

30.     The damages and injuries complained of herein arose, in part, out of

the LAWYER DEFENDANTS' representation of HART in Hillsdale District

Court criminal case numbers 13-1486 FY and 14-107 FY and Hillsdale Circuit Court criminal cases number 14-38-3215; and the damages sustained by HART occurred as a result in both Hillsdale County and Jackson County, Michigan.

## FACTS

**31.** In 2001, HART was adjudicated in the Hillsdale County Juvenile Court for a violation of MCL § 750.520e, which violation occurred when he was a minor.

**32.** As a result of his conviction for violation of MCL § 750.520e, HART was designated a "Tier II" sex offender pursuant to an Order of Disposition. Prior to a 2011 statutory amendment, the Michigan SORA, MCL § 28.721 *et seq*. required that HART report and register his address bi-annually, for 25 years.

**33.** In 2011, SORA was amended such that, beginning July 1, 2011, Tier II offenders who had been adjudicated as juveniles were no longer eligible to be listed on the SOR and, therefore, not required to register. Consequently, their names were required to be removed from the registry by those officials of the MSP who were responsible for maintaining the registry, in particular KELLEY and MARINOFF.

**34.** Under the SORA, as amended in 2011, HART, who had been adjudicated as a juvenile in 2001, was no longer eligible to remain on the SOR nor required to report, register or verify his address after July 1, 2011; and he had to be

removed from the registry, so as to prevent him from being falsely arrested and wrongfully prosecuted.

35.     Under both the current and former versions of the Michigan SORA, pursuant to MCL §§ 28.725 and 28.728, the MSP and its officials, in particular KELLEY and MARINOFF, were required to accurately and reliably maintain the SOR and inform those listed on the registry of their own duties under the law. Instead, they deliberately and/or recklessly produced and propounded a SOR that they knew to be flawed, inaccurate and unreliable and, as such, likely to result in arrest, conviction and incarceration for non-existent crimes – i.e. without probable cause.

36.     The MSP, following the July 1, 2011 amendment that no longer required Tier II juvenile offenders to register under SORA, commenced the incomplete removal of some such people from the SOR, and informed them of their removal and that they no longer had any duty to register as sex offenders, as statutorily required.

37.     KELLEY and MARINOFF, as custodians of the SOR, were required to conscientiously remove and/or ensure the removal of all persons no longer required to register, in particular HART, from the SOR after July 1, 2011.

38.     KELLEY and MARINOFF deliberately failed to conscientiously undertake the kinds of procedures necessary to remove all ineligible persons, in

particular HART herein, from the SOR and inform them of such. Further they unreasonably failed to advise courts, prosecutors, and others that the SOR was likely inaccurate and unreliable and that, as a consequence, HART was not responsible for advising law enforcement as to his whereabouts because he should no longer be on the list.

39.   Likewise, COUNTY and CITY registering authorities unreasonably failed to remove HART from the SOR. Further, they unreasonably failed to inform courts, prosecutors and others that HART was not legally, properly or appropriately on the list and therefore, not required to advise law enforcement officials as to his whereabouts.

40.   From July 2011 through July 2013, HART continued to register as a sex offender with local registration authorities – the Hillsdale Police Department and the Hillsdale County Sheriff's Department, even though he was not required to do so.

41.   Defendants WAHTOLA and LEVA were the Hillsdale County Sheriff's Department registration officials. As the registration officials, WAHTOLA and LEVA were required to act in a reasonable manner so as to maintain accurate and reliable information regarding the identity of proper registrants and regarding those whose name should not have been included in the SOR.

42.     In the event that an actual offender, properly on the SOR, failed to register with the COUNTY, pursuant to the COUNTY policy, it was the responsibility of WAHTOLA and LEVA to register the offender themselves, and place said registration in the mailbox of the Detective Office indicating that the offender failed to register so that criminal felony proceedings could be initiated.

43.     On March 4, 2012, WAHTOLA required HART to register as a sex offender and required him to sign the Explanation of Duties to Register as a Sex Offender, despite the fact that she had no reasonable basis to do so as those duties did not and should not have applied to HART after July 1, 2011. WAHTOLA intentionally, maliciously, and/or with reckless disregard for the truth, erroneously asserted that HART was required to register pursuant to SORA.

44.     By statute, the Michigan Legislature delegated the duty to accurately maintain the Michigan SOR, to the Michigan Department of State Police, pursuant to Section of 8 of SORA, MCL § 28.728.

45.     At least as early as 2013, the State of Michigan, through the Michigan Department of State Police, contracted with Defendant WATCH SYSTEMS to have WATCH SYSTEMS provide database software and maintenance support of the Michigan SOR, thereby delegating MSP's duties under MCL § 28.728 to WATCH SYSTEMS.

46.    While under contract with the MSP, WATCH SYSTEMS, acting pursuant to its customs, policies or practices, negligently, grossly negligently and with deliberate indifference, operated the SOR software, such that HART was never flagged for removal from the Michigan SOR and, in fact, remained on the public registry long after the 2011 amendment to SORA, which required the MSP to remove him from the registry, had taken effect.

47.    WATCH SYSTEMS negligently, grossly negligently and with deliberate indifference breached their duty under the SORA to HART, who was never properly flagged and removed from the registry, as required by the July 1, 2011 statutory amendment.

48.    Because WATCH SYSTEM's software failed to properly flag HART for removal from the registry, HART was improperly and falsely published as a registered sex offender on both the private law enforcement SOR database and the public registry.

49.    As a proximate result of the false publication of HART's name in the SOR database and the public registry, and because of WATCH SYSTEMS' negligence, gross negligence and deliberate indifference, HART was subjected to false arrests and malicious prosecutions, on more than one occasion, in violation of his constitutional rights, as enumerated below.

50.     For the years that WATCH SYSTEMS had the delegated statutory duty to accurately maintain the Michigan SOR, which included removing from the registry those offenders no longer subject to the SORA registration requirement, its custom, practice and policy regarding this duty was deliberately indifferent to the constitutional and statutory rights of HART. As such, WATCH SYSTEMS never properly flagged, or removed HART from the SOR, causing his subsequent constitutional deprivations.

51.     On July 5, 2013, pursuant to the 2011 amended SORA, HART was not required to register for the SOR as a matter of law.

52.     Nonetheless, on that date, without knowing that he was not required to do so, HART registered as living at 79 Budlong in Hillsdale, in a tree house in the backyard.

53.     HART, who was effectively homeless at the time, was actually staying in the backyard of 76 Budlong, but mistakenly "registered" the wrong address.

54.     On July 17, 2013, Defendant PARKER arrested HART for violation of the SORA, because he was not living at 79 Budlong.

55.     HART spent one night in Hillsdale County Jail and was released on bond the following day.

56.     At the time that PARKER arrested HART, PARKER was aware of HART's computerized criminal history (CCH) and SOR documents, which included his birthdate, the date of his 2001 conviction, and his designated sex offender tier level, making it obvious that HART was not required to register under the 2011 amended SORA.

57.     Nonetheless, PARKER, with deliberate indifference and/or reckless disregard for the truth, signed a warrant request and transmitted it to the Hillsdale County Prosecutor's Office for the purposes of obtaining a warrant to arrest HART for violating the reporting and registering requirements of the SORA, requirements that HART was not subject to.

58.     PARKER's warrant request falsely asserted that on July 17, 2013, HART was required to register as a sex offender and failed to appropriately do so.

59.     Relying on this false information, the warrant for the arrest of HART was authorized by the Hillsdale County Prosecutor's Office on July 18, 2013.

60.     On August 14, 2013, on the advice of his counsel, the LAWYER DEFENDANTS, HART entered a plea of nolo contendere, and was found guilty of one count of failure to register pursuant to Section 9 of the SORA, MCL § 28.729, a crime that did not exist under these circumstances and thus was impossible for him to have committed.  Hart was assessed a $325 fine.

**61.** From July 2013 through December 2013, HART continued to register as a sex offender with local registering authorities, even though he was not required to do so.

**62.** On December 30, 2013, Defendant LEVA, with deliberate indifference and/or reckless disregard for the truth, erroneously registered HART as a sex offender, and transmitted his information to the MSP SOR.

**63.** On January 23, 2014, PARKER advised Defendants RATHBUN and HOLTZ that HART had failed to verify his address for the SOR, notwithstanding the fact that HART was under no obligation to do so, thereby falsely accusing HART of criminal acts.

**64.** On that date, RATHBUN and HOLTZ sought to locate HART.

**65.** After learning that Hillsdale Police were looking for him, HART voluntarily appeared at the Hillsdale Police Department, where RATHBUN and HOLTZ, with deliberate indifference and/or reckless disregard for the truth, proceeded to arrest him, without probable cause.

**66.** RATHBUN and HOLTZ then sought a felony arrest warrant for HART, for "failure to comply with reporting duties" MCL §§ 28.725 & 28.729, and "failure to comply with registration act" MCL § 28.729 – laws that did not apply to HART.

**67.** The warrant request was based on the falsehood that HART was under obligation to register as a sex offender.

**68.** The warrant for the arrest of HART was authorized by the Hillsdale County Prosecutor's Office on January 24, 2014, based upon false information provided deliberately, or with reckless disregard for the truth, by RATHBUN, HOLTZ AND PARKER.

**69.** On February 10, 2014, Defendant KELLEY attested to the validity of HART's purported "Sex Offender Registry Certified Record" and transmitted those records to RATHBUN.

**70.** Those records included HART's accurate birth date, the date his registration obligation began, the statute under which he had been convicted, and his designation as a Tier II offender. Inexplicably, HART's registration end date was listed as February 20, 2054, making him obligated to register for 52 ½ years, a period that did not conform to SORA either pre or post the 2011 amendment. Furthermore, this registration end date had been altered from a 2010 version of HART's "Sex Offender Registry Certified Record," also produced and transmitted by Kelley, which listed the registration end date as August 3, 2026.

**71.** Despite having clear information at her disposal alerting her that HART was no longer required to register and should not have been on the SOR, KELLEY, using the vehicle of the SOR records, deliberately, maliciously and/or

with reckless disregard for the truth, falsely attested that HART was required to register on a semi-annual basis from August 3, 2001 through February 20, 2054 – a duration that did not even exist under the pre or post-2011 amendment SORA.

72.   In the ensuing 2014 criminal proceedings for violation of the SORA registering requirements, HART was again represented and advised by the LAWYER DEFENDANTS.

73.   On February 18, 2014, in the Hillsdale County Circuit Court, HART pled guilty to the felony of failure to register; he was advised to do so by his attorneys, the LAWYER DEFENDANTS.

74.   On March 17, 2014, Hart was sentenced to 16-24 months in State Prison and ordered to pay $1,026.94 in fines, costs, and restitution.

75.   HART was in fact incarcerated for 19 months in State Prison for Southern Michigan, located in Jackson, Michigan.

76.   On August 14, 2015, the Michigan Department of Corrections (MDOC) became aware that HART was being illegally held in prison, and notified the MSP of that fact.

77.   KELLEY confirmed that HART was adjudicated as a juvenile in 2001 and, after July 1, 2011, was no longer required to register as a sex offender.

78.   Following the revelation by MDOC and the confirmation by MSP of its error, MDOC Administrator Daphne Johnson wrote a letter to Hillsdale County

Circuit Court Judge Michael Smith to explain the circumstances that led to HART's mistaken conviction and unlawful imprisonment.

79.     On August 25, 2015, Hillsdale County Circuit Court Judge Michael Smith signed a stipulated order vacating HART's 2014 guilty plea, his subsequent conviction and sentence.

80.     On August 26, 2015, the Warden where Plaintiff HART was incarcerated, signed the discharge form and HART was released from prison.

81.     On November 17, 2015, Hillsdale District Court Judge Sara S. Lisznyai signed a stipulated order vacating HART's 2013 guilty plea, and subsequent conviction and sentence.

82.     As a direct and proximate result of the foregoing actions, Plaintiff HART has suffered the following injuries, among others:

a.  Seizure and repeated and prolonged loss of liberty;

b.  Degradation, humiliation, mental anguish, emotional suffering, and embarrassment and other psychological and emotional injuries, past and future;

c.  Loss of, and damage to, his reputation; and

d.  Loss of earnings.

## CLAIMS

### COUNT I:
### 42 U.S.C. § 1983
### FOURTH AMENDMENT – FALSE ARREST

**(LAW ENFORCEMENT DEFENDANTS AND WATCH SYSTEMS)**

**83.**    Plaintiff hereby re-alleges and incorporates by reference all of the paragraphs above as if fully set forth herein word for word.

**84.**    As described above, LAW ENFORCEMENT DEFENDANTS, and Defendant WATCH SYSTEMS, violated HART's right to be free from arrest without probable cause, said determination being based upon individualized circumstances that gave rise to a valid and reasonable probable cause determination, said right being secured by the Fourth Amendment of the United States Constitution.

**85.**    As a direct and proximate result of the foregoing actions, HART has suffered the following injuries, among others:

    a.  Seizure and repeated and prolonged loss of liberty;

    b.  Degradation, humiliation, mental anguish, emotional suffering, and embarrassment and other psychological and emotional injuries, past and future;

    c.  Loss of, and damage to, his reputation; and

    d.  Loss of earnings.

**COUNT II:**
**42 U.S.C. § 1983**
**FOURTH AMENDMENT – MALICIOUS PROSECUTION**
**(LAW ENFORCEMENT DEFENDANTS AND WATCH SYSTEMS)**

86.     Plaintiff hereby re-alleges and incorporates by reference all of the paragraphs above as if fully set forth herein word for word.

87.     As described above, Law Enforcement Defendants, and Defendant WATCH SYSTEMS, violated HART's right to be free from criminal prosecution without probable cause, said prosecution being based upon individualized circumstances that gave rise to a valid and reasonable probable cause determination, said right being secured by the Fourth Amendment of the United States Constitution.

88.     LAW ENFORCEMENT DEFENDANTS, and WATCH SYSTEMS initiated, through the use of falsehood, the aforementioned criminal prosecution of HART without probable cause.

89.     As a consequence of the criminal prosecution initiated and/or enabled and/or supported by LAW ENFORCEMENT DEFENDANTS and WATCH SYSTEMS, HART suffered an unreasonable and unconstitutional seizure and deprivation of liberty and damages related to his unlawful confinement.

90.     The aforementioned criminal proceedings were resolved in HART's favor; the convictions were vacated.

91.     As a direct and proximate result of the foregoing actions, HART has suffered the following injuries, among others:

      a.  Seizure and repeated and prolonged loss of liberty;

    b. Degradation, humiliation, mental anguish, emotional suffering, and embarrassment and other psychological and emotional injuries, past and future;

    c. Loss of, and damage to, his reputation; and

    d. Loss of earnings.

**COUNT III:**
**42 U.S.C. § 1983**
**FOURTEENTH AMENDMENT SUBSTANTIVE or PROCEDURAL DUE PROCESS-- DEFAMATION CLAIM**
**(LAW ENFORCEMENT AND WATCH SYSTEMS DEFENDANTS)**

**92.** Plaintiff hereby re-alleges and incorporates by reference all of the paragraphs above as if fully set forth herein word for word.

**93.** As described above, LAW ENFORCEMENT DEFENDANTS and WATCH SYSTEMS, acting pursuant to their customs, policies and/or practices, violated HART's right to be free from criminal prosecution without probable cause, said right being secured by the Fourth Amendment of the United States Constitution.

**94.** LAW ENFORCEMENT DEFENDANTS and WATCH SYSTEMS, by continuing to falsely publish HART's name to the public and private law enforcement SOR, for several years after HART was no longer required to register or be published to the registry, these defendants subjected HART, to humiliation, deprivation of liberty, and loss of employment.

95.    LAW ENFORCEMENT DEFENDANTS and WATCH SYSTEMS, acting pursuant to their customs, policies and/or practices, were deliberately indifferent to HART's constitutional and statutory rights and thereby caused a violation thereof. LAW ENFORCEMENT DEFENDANTS and WATCH SYSTEMS deliberately and systematically failed to remove HART's name from the SOR, which resulted in subsequent incarcerations, and caused Defendant PARKER to inform HART's employer in 2013 that he was a registered sex offender.

96.    As a direct and proximate result of the foregoing actions, HART has suffered the following injuries, among others:

    a.  Seizure and repeated and prolonged loss of liberty;

    b.  Degradation, humiliation, mental anguish, emotional suffering, and embarrassment and other psychological and emotional injuries, past and future;

    c.  Loss of, and damage to, his reputation; and

    d.  Loss of earnings.

**COUNT IV:**
**42 U.S.C. § 1983**
**MONELL CLAIM**
**(MUNICIPAL DEFENDANTS AND WATCH SYSTEMS)**

97.     Plaintiff hereby re-alleges and incorporates by reference all of the paragraphs above as if fully set forth herein word for word.

98.     At all times herein, Defendants COUNTY and CITY through their supervisors and/or policymakers, established and/or maintained the following policies and/or practices:

    a. Failure to  train, supervise, and/or discipline police officers, including but not limited to the individual Defendant officers herein, with regard to when it was proper to issue warrant requests and to arrest for SORA violations, knowing that:

        i.      These officers were ill trained and supervised as to when arrests and criminal prosecutions were appropriate under SORA and when they were not;

        ii.     This lack of training and supervision would likely result in unreasonable and unlawful arrests and criminal prosecutions.

    b. Failure to train, supervise, and/or discipline police officers, including but not limited to the individual Defendant officers herein, when the Defendants CITY, COUNTY, and WATCH SYSTEMS, or had actual notice, that said officers were likely to engage in arrests and initiate prosecutions for alleged SORA violations, when said officers lacked adequate understanding or appreciation of the SORA and related laws that they were enforcing.

99.     At all times herein, WATCH SYSTEMS, through its owners, supervisors and operators, established and/or maintained the following policies and/or practices:

    a. Failure to provide and/or maintain the statutorily mandated software

programs to reflect the 2011 change in SORA, which would have required HART and all those similarly situated to be taken off the registry, when it was on actual notice that officers relying on the registry software would undertake and engage in arrests and initiate prosecutions under provisions of SORA, when the officers were likely to target persons for such arrests and prosecutions who were legally ineligible for such actions;

b. Failure to promulgate sufficient training materials sufficient to ensure that law enforcement officers, including but not limited to the individual defendant officers herein, when WATCH SYSTEMS knew, or had actual notice, that said officers could undertake and engage in arrests and initiate prosecutions that lacked probable cause, in reliance the information obtained through WATCH SYSTEMS-based registry software;

c. Failure to properly monitor changes in Michigan law and to modify its software program to reflect changes in the law.

**100.** Each of the aforementioned policies and/or practices, i.e., the failures to train, supervise, and/or discipline the individual defendants, was known to Defendants CITY, COUNTY, and WATCH SYSTEMS, as being highly likely and probable to cause violations of the constitutional rights of members of the public, including but not limited to HART herein.

**101.** Defendants CITY, COUNTY, and WATCH SYSTEMS were deliberately indifferent to the obvious risk that such policies and practices would lead to constitutional violations such as those alleged herein.

**102.** Each such custom, policy and/or practice was a moving force in the violations of HART's constitutional rights, as set forth herein.

**103.**   As a direct and proximate result of COUNTY's CITY's, and WATCH SYSTEM's, policies and/or practices – which were a moving force in the violations of HART's constitutional rights, as set forth in Counts I-IV above – HART has suffered the following injuries, among others:

    a.  Seizure and repeated and prolonged loss of liberty;

    b.  Degradation, humiliation, mental anguish, emotional suffering, and embarrassment and other psychological and emotional injuries, past and future;

    c.  Loss of, and damage to, his reputation; and

    d.  Loss of earnings.

## COUNT V
## STATE LAW NEGLIGENCE
## (DEFENDANT WATCH SYSTEMS)

**104.**   Plaintiff hereby re-alleges and incorporates by reference all of the paragraphs above as if fully set forth herein word for word.

**105.**   The State of Michigan, MSP contracted with and delegated its statutory duty under MCL § 28.728 to provide and maintain an accurate sex offender registry, including removal of offenders no longer required to register, to Defendant WATCH SYSTEMS.

**106.**   WATCH SYSTEMS had a statutory duty to create its software such that it maintained the SOR in a manner consistent with Michigan Law.

107. WATCH SYSTEMS had a duty to create software that, had it not been negligently created, would have removed and/or properly flagged HART for removal from the SOR, as statutorily required.

108. WATCH SYSTEMS breached that duty by negligently creating, deploying and maintaining faulty software for the administration of the Michigan SOR.

109. WATCH SYSTEMS did not provide software to the State of Michigan to accurately maintain the Michigan SOR.

110. As a proximate result of WATCH SYSTEMS' failure to properly act, HART was never properly flagged or removed from the SOR, resulting in HART's multiple wrongful arrests, prosecutions, convictions, and extended incarceration for failure to register, when in fact, he was not legally required to register.

111. The negligent acts of creating, deploying and maintaining faulty software to the State of Michigan that did not meet the statutory duty delegated to WATCH SYSTEMS, *vis-à-vis* their contract with the State of Michigan, MSP, was the proximate cause of HART's damages and he has suffered the following injuries, among others:

    a. Seizure and repeated and prolonged loss of liberty;

    b. Degradation, humiliation, mental anguish, emotional suffering, and embarrassment and other psychological and emotional injuries, past and future;

c.  Loss of, and damage to, his reputation; and

d.  Loss of earnings.

### COUNT VI:
### STATE LAW
### LEGAL MALPRACTICE
### (LAWYER DEFENDANTS)

**112.**   Plaintiff hereby re-alleges and incorporates by reference all of the paragraphs above as if fully set forth herein word for word.

**113.**   The elements of legal malpractice are: 1) attorney-client relation; 2) negligence or breach of the standard of care; 3) proximate causation of; 4) damages. HART will address each.

### A.   <u>Attorney-Client Relation</u>

**114.**   No doubt that this element exists between HART and the LAWYER DEFENDANTS.

### B.   <u>Breach of Standard of Care/Negligence</u>

**115.**   Once a lawyer accepts a retainer to represent a client, he/she is obligated to exert his/her best efforts wholeheartedly to advance the client's legitimate efforts.  See Legal Ethics, Model Rule 1.1 and *In re: Daggs*, 384 Mich. 729 (1971). A lawyer has a duty of competence.   MRCP 1.1

**116.**   An attorney owes a client a duty of care – an obligation to use

reasonable care, skill, discretion and judgment. *Lipton v. Boesky*, 110 Mich. App. 589, 594 (1981); *Peterson v. Simasko Simasko & Simasko, P.C.*, 228 Mich. App. 707, 708 (1998).

117.   At attorney thereby assumes the position of highest trust and confidence. *Hart v. Comerica Bank*, 957 F.Supp. 958, 981 (E.D. MI 1997).

118.   An attorney who practices criminal law must know the jurisdiction's pertinent statutes and the common law.

119.   An attorney has a duty to keep a client reasonably informed regarding the representation, and the duty to explain a matter to the extent reasonably necessary for the client to make an informed decision.  MRCP 1.4.

120.   The LAWYER DEFENDANTS materially breached each of their duties by:

   a. Advising HART to plead guilty on August 14, 2013 to a criminal charge of failing to register as a sex offender when he was not required to do so under state law;

   b. Failure to ascertain that the felony for which they advised HART to plead guilty to did not exist for HART and thus it was legally impossible for him to have committed this crime;

   c. Failure to bring the facts asserted in Paragraph 120(b) above to the attention of the Prosecutor and the Court and to move to dismiss, as a result;

   d. Advising HART to plead guilty again on February 18, 2014 to a criminal charge of failing to register as a sex offender when he was not required to so register under state law.

## C.   <u>Causation</u>

**121.**   Causation may be established as a matter of law in the absence of professional care is so manifest to be within the knowledge of a lay person. *Law Offices of Lawrence J. Stockler, P.C. v. Rose*, 174 Mich. App. 14, 48 (1989).

**122.**   In this case it is certainly "more likely than not" that "but for the [LAWYER DEFENDANTS'] conduct, [HART]'s injuries would not have occurred." *Pontiac School District v. Miller Canfield Paddock & Stone*, 221 Mich.App602, 614 (1997) (internal quotation marks and citation omitted).

**123.**   The LAWYER DEFENDANTS' negligence was the direct and foreseeable cause of the damages set forth below.

**124.**   Thus, causation is established.

### D.   <u>Damages</u>

#### 1.   <u>Direct Damages</u>

**125.**   An attorney is liable for all damages proximately caused by the wrongful act. *Basic Food Industries v. Grant*, 107 Mich. App. 685, 693 (1981), lv. den. 413 Mich. 913 (1982); 3 Mallen & Smith Legal Malpractice §21:4.

**126.**   As a direct and proximate result of the negligence and malpractice of the LAWYER DEFENDANTS, Plaintiff HART has suffered the following direct injuries, among others:

a.  Seizure and repeated and prolonged loss of liberty;

    b.  Loss of, and damage to, his reputation; and

    c.  Loss of earnings.

**2.**    <u>**Mental Anguish and Emotional Damages**</u>

**127.**    Under the appropriate circumstances, such as here, a client is entitled to recover mental anguish and emotional damages.  *Gore v. Rains & Block*, 189 Mich. 729 (1991).  The whole episode has caused HART extreme mental anguish due to his unlawful incarceration and he has suffered extreme emotional suffering and embarrassment and other psychological and emotional injuries, past and future.

<u>**RELIEF REQUESTED**</u>

**WHEREFORE**, Plaintiff, ANTHONY HART, demands the following relief, jointly and severally against all Defendants, for the violation of his rights as set forth in the Counts I through VI herein:

    (a)  Compensatory damages for the emotional, and economic injuries suffered by HART as a result of Defendants' unlawful, unconstitutional and unjustified conduct, in an amount determined by a jury to be fair, just, and reasonable and in conformity with the evidence presented at trial;

    (b)  Punitive and/or exemplary damages against the individual Defendants to the extent allowable by law;

    (c)  Attorney's fees, as allowed, pursuant to 42 U.S.C. § 1988;

(d)   The costs, interest, and disbursements of this action; and

(e)   Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff in the above entitled action demands a trial by jury on all issues so triable in his Complaint.

Respectfully submitted,

**GOODMAN & HURWITZ, P.C.**

By:  *s/ William H. Goodman*_____
William H. Goodman (P14173)
Kathryn Bruner James (P71374)
Julie H. Hurwitz (P34720)
1394 E. Jefferson Ave.
Detroit, MI 48207
(313) 567-6170/Fax: (313) 567-4827
bgoodman@goodmanhurwitz.com

**SOMMERS SCHWARTZ, P.C.**

By: *s/ David M. Black*_____
David M. Black (P25047)
One Towne Square, Suite 1700
Southfield, MI 48076
(248) 355-0300
dblack@sommerspc.com

**STEVEN T. BUDAJ, P.C.**

By:  *s/ Steven T. Budaj*_____
Steven T. Budaj (P30154)
65 Cadillac Square, Suite 2915
Detroit, MI  482226
313-963-9330
stbudaj@counsel.cc

Dated:  June _____, 2016