## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ANTHONY HART,

      Plaintiff,

                                Case No. 16-10253

v.

                                HONORABLE DENISE PAGE HOOD

COUNTY OF HILLSDALE, et al.,

      Defendants.

_____/

## ORDER DENYING DEFENDANT WATCH
## SYSTEM, L.L.C.'s MOTION TO DISMISS [#55]

## I.    INTRODUCTION

In its Motion to Dismiss [#55], Defendant Watch Systems, L.L.C. ("Watch") asserts that Plaintiff's cause of action should be dismissed as it relates to Watch because the Court lacks personal jurisdiction over Watch. Watch's Motion to Dismiss was fully briefed, and the Court held a hearing on the Motion to Dismiss on September 14, 2016. For the reasons that follow, the Court denies Watch's Motion to Dismiss.

## II.    BACKGROUND

As set forth in the memo pertaining to Marinoff's and Kelly's Motion to Dismiss, Plaintiff has sued numerous defendants as the result of being wrongfully arrested and convicted on two occasions for failure to register pursuant to the

Michigan Sex Offenders Registration Act ("SORA").

Watch is a Louisiana limited liability company that offers software solutions for sex offender registries to law enforcement and state agencies around the country. (Am. Compl., Dkt. #22, ¶ 25; Dkt. #55, PgID #525) Since at least 2012, Watch has had an agreement with the Michigan State Police (hereinafter "MSP") to accurately and reliably provide and maintain sex offender registry database software (the "Agreement") consistent with the duties of the MSP under MCL § 28.728. (Am. Compl., Dkt. #22, ¶ 25) After entering the Agreement, Watch provided training in Michigan to MSP staff regarding the use of Watch's product, and it provides ongoing maintenance and service of its product used by the MSP. (Dkt. #55, PgID 525-26) Any other facts pertinent to Watch will be set forth in the discussion below.

## III.   APPLICABLE LAW & ANALYSIS

## A.   Rule 12(b)(2)

The procedure for deciding a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) in the Sixth Circuit is set forth in *Serras v. First Tennessee Bank National Association*, 875 F.2d 1212, 1214 (6th Cir. 1989). The court may determine the motion on the basis of the submitted affidavits alone, it may permit discovery in aid of the motion, or it may conduct an evidentiary hearing, either pretrial or during trial, on the merits of the motion. *Id.* (quoting *Marine Midland Bank, N.A.*

2

*v. Miller*, 664 F.2d 899, 904 (2nd Cir. 1981)).  If the written submissions raise disputed issues of fact or require determinations of credibility, the court may order a hearing.  *See id.*  The plaintiff then must prove that jurisdiction exists by the same standard that would apply if the matter were deferred to trial: the preponderance of the evidence.  *Serras*, 875 F.2d at 1214 (citing *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980), *cert. denied*, 450 U.S. (1981) (stating that "the plaintiff must show by a preponderance of the evidence that jurisdiction exists").

"If the court rules on written submissions alone, it must 'consider the pleadings and affidavits in the light most favorable to the plaintiff.'"  *Id.* (quoting *Welsh*, 631 F.2d at 436).  Plaintiff "may not rest on his or her pleadings to answer affidavits submitted by the movant, but must set forth, 'by affidavit or otherwise[,] . . . specific facts showing that the court has jurisdiction.'"  *Serras*, 875 F.2d at 1214 (citation omitted).  However, Plaintiff's burden is merely to make a *prima facie* showing that personal jurisdiction exists.  *See Id.*  If plaintiff meets that burden, the motion to dismiss should be denied, "notwithstanding any controverting presentation by the moving party."  *Id.* (quoting *Marine Midland Bank*, 664 F.2d at 904).

The issue of whether a federal court has personal jurisdiction over a defendant is determined by applying the law of the state in which the court sits.  *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938) (noting that "Except in matters

governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state.").   In addition, the court must consider whether constitutional due process permits personal jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991).  The relevant inquiry is whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with "traditional notions of fair play and substantial justice."  *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945).

The state of Michigan's long-arm statute on personal jurisdiction over corporations provides that limited or "specific" jurisdiction may be exercised where a specified relationship exists between a corporation and the forum. M.C.L. 600.715, provides:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
>
> 1.   The transaction of any business within the state.
> 2.   The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
> 3.   The ownership, use, or possession of any real or tangible personal property situated within the state.
> 4.   Contracting to insure any person, property, or risk located within this state at the time of contracting.

4

5.    Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

*Id.*

## B.    Analysis

Plaintiff argues that the Court has limited personal jurisdiction over Watch pursuant to M.C.L. 600.715(1), (2) and (5).  Watch argues that Plaintiff: (a) fails to allege any specific action by Watch that subjects it to the Court's jurisdiction; (b) cannot allege any specific action by Watch that subjects it to the Court's jurisdiction because Watch does not transact any business in Michigan; and (c) has not asserted any claims that involve activity by Watch.  It is uncontested that Watch: (1) performs all of its services in connection with the Agreement from its office in Covington, Louisiana, except for the training of MSP staff; (2) does not maintain any offices or have any employees in Michigan; and (3) does not maintain an agent for service of process in Michigan.  Watch contends that it has not entered into a contract for services to be performed or for materials to be furnished in Michigan.  Watch also acknowledges that its "only physical presence in Michigan is limited to briefly training MSP staff to use OffenderWatch" (Watch's product). (Dkt. #55, PgID 533) Watch argues that such an "insignificant activity unrelated to Plaintiff's claims can hardly be said to support . . . the exercise of specific jurisdiction." *Id.*  Watch further asserts that it is not tasked with or responsible for maintaining the SOR, nor does it

5

participate in regulating the content on the SOR. *Id.*, Ex. 1 at ¶7.

The Court is not be persuaded by Watch's argument. The Sixth Circuit has held that "if [a] defendant conducted even the slightest act of business in Michigan, the first statutory criteria for personal jurisdiction under section 600.715(1) is satisfied." *Lanier v. American Board of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988), *cert. denied*, 488 U.S. 926 (1988); *Neogen Corp. V. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002) (citation omitted) ("contact with Michigan customers through the mail and the wires"); *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6 th Cir. 2012) (a letter sent from the defendant to the plaintiff was a nominal business transaction that satisfied the Michigan long-arm statute).

As Plaintiff argues, "it does not matter that Watch . . . may have its sole place of business in Louisiana, may not have employees in Michigan, and/or may not maintain an agent for service of process in Michigan." (Dkt. #62, PgID 583, citing Dkt.#55, PgID 533)  Plaintiff's allegations suggest that Watch "negotiated via telephone with Michigan clients (the MSP) for the sale of its software, sold its software system to clients in Michigan . . ., and presumably received payment from Michigan." (Dkt. #62, PgID 584, citing Dkt.#55, PgID 525) Watch admits that its representatives were sent to Michigan to train MSP staff about Watch's software – and provides ongoing services to the MSP by "operating and maintaining the software, as

6

well as [providing] other basic troubleshooting functions, such as providing 'tech
bulletins' and help desk availability." (Dkt. #62, PgID584, citing Dkt. #55, PgID 526,
533).  The Court finds that these transactions satisfy M.C.L. 600.715(1) and the
"slightest act of business" requirement set forth in *Neogen Corp. Id.* at 888. *See also*
*Alisoglu v. Central States Thermo King of Okla., Inc.*, 2012 WL 1666426, at *5 E.D.
Mich. May 11, 2012) (first prong satisfied where defendant's employees
communicated with plaintiffs through email and telephone calls and defendant
accepted payments through the mail from Michigan).

Plaintiff also argues that the Court should exercise limited personal jurisdiction
pursuant to M.C.L. 600.715(2) because Watch's acts outside of Michigan have had
tortious consequences on Plaintiff in Michigan.  Specifically, Plaintiff alleges that
Watch's negligent design and maintenance of its software (Dkt. #22 at ¶¶5, 45-48)
was a cause of his harm in July-August 2013 and January-February 2014, when his
wrongful arrests and prosecutions occurred. (Dkt. #22 at ¶¶ 35-37, 47-48, 53-59, 65-
68, 72-74) Based on those allegations, the harm Plaintiff suffered due to, in part,
Watch's activities (or failures) would have continued until Plaintiff was released from
prison, such that his injuries could be attributable to Watch.

For the reasons set forth in the preceding paragraph, the Court rejects Watch's
arguments that: (1) Plaintiff's injuries occurred before the Agreement was entered

because, according to Watch, Plaintiff's injuries stemmed only from the MSP's failure to remove Plaintiff from the SOR when the SORA was amended in July 2011, months before the Agreement was executed; and (2) Watch only provided software and the MSP entered, edited, and removed all information. The Court concludes that Plaintiff has met his burden under M.C.L. 600.715(2).

Plaintiff also argues that he has satisfied his burden pursuant to M.C.L. 600.715(5) of alleging that Watch contracted for "services to be performed or for materials to be furnished in" Michigan. This argument is more tenuous, as the only "services performed" in Michigan were training of MSP staff and the materials were not furnished "in" Michigan, but that may be enough. *See Brabeau v. SMB Corp.*, 789 F.Supp. 873, 877 (E.D. Mich. 1992) (company technician sent to Michigan to help in the installation of a printing press constituted service performed in the state under M.C.L. 600.715(5)). With respect to Plaintiff's argument about materials being furnished in Michigan, the product seems to be a website maintained from Louisiana that MSP staff accessed. Although MSP staff were able to use Watch's product in Michigan, it seems debatable that there have been goods delivered to Michigan, which distinguishes this case from *Starbrite Distr., Inc. v. Excelda Mfg. Co.*, 454 Mich. 302, 307-08 (1997) (where the contract required delivery of goods to "a specific Michigan address").

8

The Court must also determine whether due process permits personal jurisdiction over Defendant, a non-resident, who is not generally engaged in activities within the State of Michigan.  "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if [it] be not present within the territory of the forum, [defendant] have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *International Shoe Co.*, 326 U.S. at 316 (citation omitted).  The Supreme Court has determined that one way to measure fairness is to consider whether the defendant's conduct is such that it "should reasonably anticipate being haled into court there."  *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296 (1980).  The court must specifically consider three criteria:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum jurisdiction to make the exercise of jurisdiction over the defendant reasonable.

*Theunissen*, 935 F.2d at 1460; *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F2d 374, 381 (6th Cir. 1968).

The Sixth Circuit has explained that a defendant must have "'purposefully directed' his activity at residents in the forum" to meet the "fair warning" requirement.

*Lanier*, 843 F.2d at 910.  Specifically, the court noted:

> By "purposefully availing" itself of opportunities in the forum, such as
> by purposefully directing itself to forum residents, a defendant opens
> itself up to that forum's jurisdiction.   "[W]here the defendant
> 'deliberately' has engaged in significant activities within a State . . . or
> has created 'continuing obligations, ' between [it]self and residents of
> the forum . . . [it] manifestly has availed [it]self . . . and . . . it is
> presumptively not unreasonable to require [it] to submit to ... litigation
> in that forum . . . ."

*Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985)).

In this case, the Court is satisfied that Watch has "purposely availed" itself of the privilege of acting in this forum.  Watch entered into the Agreement with the State of Michigan (MSP), it sent one or more representatives to Michigan to train MSP staff, and it presumably receives payment from the State of Michigan (MSP).  The fact that MSP contacted Watch is irrelevant, especially as Watch has a website from which it sought business from state agencies such as the MSP and admittedly provides the MSP with log-in information in order to access the service provided by Watch. *See, e.g., Neogen*, 282 F.3d at 890-91; Dkt. #55, PgID 526.

The Court next must determine whether an action "arise[s] from" the defendant's contacts with the forum.  The Sixth Circuit has concluded that the "arising out of" requirement of the long-arm statute is satisfied if the cause of action was "made possible by" or "lies in the wake of" the defendant's state contacts. *Lanier*, 843 F.2d at 909.  Stated another way, this requirement requires only "that the cause

10

of action, of whatever type, have a substantial connection with the defendant's in-state activities." *Mohasco*, 401 F.2d at 384, n.27.  It is "[o]nly when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." *Mohasco*, 401 F.2d at 384, n.29.

Watch contends that its actions have no connection to Plaintiff's injuries because: (1) the injuries occurred prior to Watch entering into the Agreement (which Watch asserts is the only possible connection); and (2) MPS, not Watch, controls the data that is inputted into the software.  The first contention was discussed and rejected above because Plaintiff alleges that Watch's negligent design and maintenance of its software was a cause of his harm in July-August 2013 and January-February 2014. As to the second contention, Plaintiff has alleged that his wrongful arrests and prosecutions occurred because the software did not in any way detect or flag that Plaintiff should not have been on the SOR after the SORA was amended in 2011.  For those reasons, the Court finds that Plaintiff has sufficiently alleged that Watch's actions have a substantial connection to the injuries suffered by Plaintiff in Michigan.

The Court turns to the issue of whether the acts of Watch – or the consequences caused by Watch – have a substantial enough connection with Michigan to make the exercise of personal jurisdiction reasonable. *Mohasco*, 401 F.2d at 381.  "When the

11

first two elements are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." *First National Bank v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982).  A defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

To the extent Watch proffers any reasons why the exercise of jurisdiction over it would be unreasonable, they are the same reasons rejected above.  Those reasons include that Watch: (a) is a passive actor, (b) operates out of Louisiana, (c) does not have any responsibility for reviewing or maintaining the content of the MSP information, and (d) had no responsibility for Plaintiff's injury, as it was attributable to others.  The Court concludes that exercising jurisdiction over Watch would not offend traditional notions of fair play and substantial justice.

## IV.   CONCLUSION

Accordingly, IT IS ORDERED that Watch's Motion to Dismiss [#55] is

**DENIED**.

IT IS ORDERED.


S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated:  March 31, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager