UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY HART,

    Plaintiff,

                                  Case No. 16-10253

v.

                                  HON. DENISE PAGE HOOD

COUNTY OF HILLSDALE, et al.,

    Defendants.

_____/

## ORDER DENYING MOTIONS TO DISMISS
## FILED BY COUNTY DEFENDANTS [#70]
## and CITY DEFENDANTS [#83]

**I.    INTRODUCTION**

This matter is before the Court on Plaintiff Anthony Hart's ("Hart") complaint that he was wrongfully convicted for failing to register his proper residency with the Michigan Sex Offender Registry ("SOR"). Defendants Hillsdale County ("County"), Christine Wahtola ("Wahtola"), Kwinn Leva ("Leva"), and Lieutenant Timothy Parker ("Parker") (collectively, the "County Defendants") (Doc. 70) and Defendants City of Hillsdale ("City"), Officer Shelby Rathbun ("Rathbun"), and Officer Todd Holtz ("Holtz") (collectively, the "City Defendants") (Doc. 83) have filed separate motions to dismiss. Responses to the motion to dismiss were filed, the City

1

Defendants filed a reply, and the period for filing reply expired without the County Defendants filing a reply. On August 2, 2107, the Court held a hearing on the motions for August 2, 2017. For the reasons that follow, both motions are denied.

## II. BACKGROUND

The following facts are based on the allegations by Hart, all of which must be accepted as true for purposes of deciding the motions discussed herein.

Hart violated MCL § 750.520(e) when he was 16 years old, though by the time of his juvenile conviction for fourth degree criminal sexual conduct (a Tier II offense), he was 17 years old. At that time, the Michigan Sex Offender Registration Act, MCL § 28.721 ("SORA"), required that Hart register his address bi-annually for 25 years due to his conviction. SORA was amended as of July 1, 2011, and offenders adjudicated of a Tier II offense as juveniles were no longer required to register. It is undisputed that, as of July 1, 2011, Hart no longer had a legal obligation to register his residency with the SOR.

The Michigan State Police ("MSP") was required to remove Hart from the SOR following the 2011 SORA amendment. MSP employees did not properly remove Hart's name from the list. Neither the Hillsdale County Sheriff Department nor the City of Hillsdale Police Department removed Hart's information from the SOR or took any action to cause such a removal. Neither the Michigan State Police (MSP),

Defendant Hillsdale County, nor Defendant City informed Hart that, pursuant to a change in the law, he was no longer legally required to report and register. (Doc. 43-1, SAC ¶¶ 38-39).

Rathbun and Holtz were, at all times relevant herein, employed by the City as officers with the Hillsdale Police Department and acted within the scope of their employment pursuant to the policies and practices of the City. The City, through the Hillsdale Police Department serves as a SORA local registering authority. As a registering authority, the City—through its officers, including Rathbun and Holtz—is responsible for collecting and maintaining extensive and detailed information on all persons required to register under SORA, including Hart. M.C.L. §§ 28.722(n) and 28.727 et seq.

Wahtola and Leva were both County Sheriff's Department registration officials, responsible for receiving and maintaining detailed information on the identity of proper registrants and those persons who should not have been included on the SOR, including criminal history and SORA-related obligations of each registered sex offender residing in Hillsdale County. (Doc. 43-1, SAC ¶¶ 41-42). See M.C.L. §§ 28.722(n) and 28.727 et seq. SORA registration is required to include, among other things, the text of the provision of law that defines the criminal offense for which the sex offender is registered, the offender's tier classification, and the individual's

complete criminal history record, including the dates of all arrests and convictions, in addition to a summary of the offender's convictions for all SORA-listed offenses. M.C.L. 28.727(1)(n); (2)(b), (d) and (f). Hart has alleged that, as local SORA registering officials, Wahtola and Leva were expected to be familiar with developments in the law concerning SORA. Based on those expectations, Wahtola and Leva possessed all the necessary information to know that, after the 2011 Amendment to the SORA, Hart was no longer required to register as a sex offender.

On March 4, 2012, Wahtola, either deliberately or with reckless disregard for the truth contained in the information available to her, required Hart to register as a sex offender when he was no longer required to do so. (Doc. 43-1, SAC ¶ 43). In so doing, Wahtola knowingly propagated false information that would later be used to erroneously establish probable cause for Hart's arrests and prosecutions.

On July 17, 2013, Leva, deliberately or with reckless disregard for all the information she possessed indicating that Hart was no longer required to register as a sex offender, advised Parker that Hart had registered an incorrect address. (County Incident Report, Doc. 70-2, PgID 693). Parker then used that information to obtain a warrant for Hart's arrest. *Id.* On December 30, 2013, when Hart did not report to the Sheriff's Department to register, Leva herself registered Hart as a sex offender, and transmitted this information to the MSP (Doc. 43-1, SAC ¶ 62), thereby falsely

conveying that Hart had committed a criminal act, and knowingly propagating false information to be used to arrest and prosecute Hart.

From July 2011 through July 2013, Hart continued to register on the SOR, including identifying his address. On July 5, 2013, unaware that he was no longer required to register his address with the SOR, Hart erroneously registered his address as "79 Bulldog" in Hillsdale. Hart's actual address was "76 Bulldog" in Hillsdale.

On July 17, 2013, Parker arrested Hart for violating SORA by listing an incorrect address. At the time Parker arrested him, Parker was aware of Hart's computerized criminal history and his SOR documents—documents that included Hart's birth date, the date of his 2001 conviction, and his designated offender tier level (Tier II) that reflected that Hart was 17 years old in 2001, such that Hart was no longer required to register as a sex offender. (*Id.* at ¶ 56) Hart alleges that, despite that knowledge, Parker, deliberately or with reckless disregard for the truth, signed a warrant request and transmitted it to the County Prosecutor's Office for the purpose of obtaining an arrest warrant for Hart on the basis of an alleged violation of a SORA requirement to which Parker knew Hart was not subject. *Id.* at ¶ 57. The warrant was approved by the County Prosecutor's Office on July 18, 2013. On August 14, 2013, Hart entered a plea of nolo contendere, was found guilty of one count of failure to register pursuant to SORA (MCL § 28.279), and was placed on probation.

From July 2013 through December 2013, Hart continued to register as a sex offender with local registering authorities (Hillsdale County). On January 23, 2014, Parker advised Rathbun and Holtz that Hart had failed to verify his address for the SOR, notwithstanding the fact that he knew Hart was under no obligation to register, falsely accusing Hart of criminal acts. *Id*. at ¶ 63. Parker's false representation was used to manufacture probable cause for a warrant to arrest Hart. On January 23, 2014, after learning that the City Police were looking for him, Hart voluntarily appeared at the County Sheriff's Department, where he was met by Rathbun and Holtz and wrongfully arrested for failing to comply with SORA reporting duties. *Id*. at ¶ 65. On February 10, 2014, MSP analyst Marci Kelley transmitted to Rathbun a certified copy of Hart's "Sex Offender Registration" records, which falsely stated that Hart was still required to report and register on a semi-annual basis until February 20, 2054—a duration that did not exist, either prior to or after the 2011 amendment. *Id*. at ¶¶ 69, 71.

Hart's SOR records included his birth date, the date his registration obligation began, the statute under which he had been convicted, his designation as a Tier II offender, as well as the registration end date of February 20, 2054, which Hart suggests made it blatantly obvious that the record was inaccurate and unreliable. *Id*. at ¶ 70. On the faulty advice of his attorneys, Hart pleaded guilty to the felony of

failure to register and, on March 17, 2014, was sentenced to 16-24 months in state prison and ordered to pay $1,026.94 in fines, costs, and restitution. *Id*. at ¶¶ 72-74. Hart was wrongfully incarcerated for 17 months, until August 2015.

In August 2015, an agent of the Michigan Department of Corrections became aware that Hart was being detained wrongfully and notified the MSP. *Id*. at ¶¶ 75-76. On August 25, 2015, Hillsdale County Circuit Court Judge Michael Smith vacated Hart's 2014 guilty plea, conviction and sentence and the following day, Hart was released from prison. *Id*. at ¶¶ 79-80. On November 17, 2015, Hart's 2013 guilty plea, conviction and sentence were also vacated. *Id*. at ¶ 81.

At the time of Hart's 2013 and 2014 wrongful arrests and prosecution, the MSP, the County's, and the City's law enforcement databases contained all the necessary information to indicate that Hart was no longer required to register as a sex offender after July 2011.

On April 26, 2016, Hart filed his First Amended Complaint ("FAC"). On March 31, 2017, the Court granted in part and denied in part Hart's Motion for Leave to File a Second Amended Complaint ("SAC"), and Hart has since filed the SAC.

### III. APPLICABLE LAW

    A. **Rule 12(b)(6)**

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. Accepting all factual allegations as true, the court will review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful. *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### B. Qualified Immunity

Defendants assert that they are entitled to qualified immunity with respect to the Section 1983 claims Hart filed against them. Qualified immunity is an affirmative defense against a Section 1983 claim. *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996). The doctrine of qualified immunity "shields 'governmental officials performing discretionary functions . . . from civil damages liability as long as their

actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). *See also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (government officials performing discretionary functions are shielded from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

"[T]he test for qualified immunity has only two prongs—whether the defendant violated a constitutional right and whether the right at issue was clearly established." *Brown v. Lewis*, 779 F.3d 401, 417 (6th Cir. 2015) (citing *Plumhoff v. Rickard*, — U.S. —, 134 S. Ct. 2012, 2020 (2014), and *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Creighton,* 483 U.S. at 640. This standard does not require the very action in question to have previously been held unlawful, only that its unlawfulness be apparent in light of pre-existing law. *Id.* (citing *Mitchell* v. *Forsyth,* 472 U.S. 511, 535 n.12 (1985)).

Once a government official has raised the defense of qualified immunity, the plaintiff "bears the ultimate burden of proof to show that the individual officers are

not entitled to qualified immunity." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012) (citation omitted). A plaintiff must also establish that each individual defendant was "personally involved" in the specific constitutional violation. *See Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998); *Bennett v. Schroeder*, 99 F. App'x 707, 712-13 (6th Cir. 2004) (unpublished) ("It is well-settled that to state a cognizable Section 1983 claim, the plaintiff must allege some personal involvement by the each of the named defendants").

## IV. ANALYSIS

### A. Hart's Claims Against the Individual Defendants (Wahtola, Leva, Parker, Rathbun, and Holtz)

Hart first claims that each of the individual Defendants was responsible for one or both of his false arrests, in violation of his Fourth Amendment rights. For a plaintiff to have a viable false arrest claim under Section 1983, he must prove that the arresting officer lacked probable cause for the arrest.

> A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff. *Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) (citing *Painter v. Robertson*, 185 F.3d 557, 569 (6th Cir. 1999)). An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983.

*Voticky v. Village of Timberlake, OH*, 412 F.3d 669, 677 (6th Cir. 2005). A government official who applies the means by which a person is seized in violation

of the Fourth Amendment can be held liable under Section 1983. *See, e.g., Berg v. City of Allegheny*, 219 F.3d 261, 272 (3d Cir. 2000) ("a government official's liability for causing an arrest is the same as for carrying it out"). *See also Malley v. Briggs,* 475 U.S. 335, 344 n.7 (1986) (an individual is "responsible for the natural consequences of his actions").

Hart next alleges that the individual Defendants maliciously prosecuted him. To succeed on a malicious prosecution claim, Hart must satisfy four elements:

> (1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014). As the Sixth Circuit recently stated, a police officer violates a person's clearly established right to freedom from malicious prosecution under the Fourth Amendment "only when his deliberate or reckless falsehoods result in arrest and prosecution without probable cause." *Johnson v. Mosely*, 790 F.3d 649, 654-55 (6th Cir. 2015) (citing *Newman v. Township of Hamburg*, 773 F.3d 769, 772 (6th Cir. 2014)).

Hart's third claim against the individual Defendants is for defamation, in violation of his Fourteenth Amendment substantive or procedural due process rights. The Supreme Court has held that a plaintiff may not recover under Section 1983 for

damages to reputation if the alleged defamatory acts did not also result in the deprivation of a constitutionally protected right or interest. *See Paul v. Davis*, 424 U.S. 693, 701 (1976). In this case, to establish the violation of a constitutional right, Hart must establish: (1) the defendant(s) stated a deliberate falsehood or showed reckless disregard for the truth, and (2) the allegedly false or omitted information was material to the finding of probable cause. *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003) (citations omitted). There is no dispute that Hart has alleged that the false information was material to the finding of probable cause, but the Defendants argue that Hart has failed to allege that the individual Defendants stated a deliberate falsehood or showed reckless disregard for the truth when pursuing then arrests and prosecutions of Hart.

Both the City Defendants and the County Defendants argue that none of the individual Defendants had reason to suspect that Hart was improperly on the SOR. The City Defendants assert that it was the MSP's responsibility for maintaining an accurate SOR and that Rathbun (and Holtz, to whom only Rathbun communicated relevant information) had been informed: (a) by Parker that Hart was on the SOR; (b) by Parker that Hart had failed to register as required; and (c) by Hart that he was subject to registration (because, the City Defendants assert, "[P]laintiff had previously admitted [that fact] when he signed the 2012 "Explanation of Duties to Register as a Sex Offender"). (Doc. 83, PgID 1025). The County Defendants attribute all of the

fault to the MSP, stating that the MSP provided inaccurate information to Hillsdale officials.

The County Defendants' argument ignores the allegations in Hart's pleadings. As set forth above, Hart alleged that, on March 4, 2012, Wahtola, either deliberately or with reckless disregard for the truth contained in the information available to her, required Hart to register as a sex offender when he was no longer required to do so. (Doc. 43-1, SAC ¶ 43). In so doing, Wahtola created false information that would later be used to erroneously establish probable cause for Hart's arrests and prosecutions. Similarly, Hart alleged that, on July 17, 2013, Leva, deliberately or with reckless disregard for all the information she possessed indicating that Hart was no longer required to register as a sex offender, advised Parker that Hart had registered an incorrect address. (County Incident Report, Doc. 70-2, PgID 693). Parker then used that information to obtain a warrant for Hart's arrest. *Id*.

Then, on December 30, 2013, when Hart did not report to the Sheriff's Department to report and register, Leva registered Hart as a sex offender, and transmitted this information to the MSP (Doc. 43-1, SAC ¶ 62). In doing so, she falsely conveyed that Hart had committed a criminal act and created false information that was used to arrest and prosecute Hart in 2014 after Parker directed Rathbun and Holtz to arrest Hart. The Court finds that Hart has alleged that each of the individual County Defendants had responsibility for receiving and maintaining detailed

information on the identity, criminal history and SORA-related obligations of each registered sex offender residing in Hillsdale County, such that Hart's claims for false arrest, malicious prosecution, and defamation can proceed against each of them.

The City Defendants' argument has more merit, but it still fails. In his response brief, Hart states that the individual City Defendants had "responsib[ility] for collecting and maintaining extensive and detailed information on all persons required to register under the SORA" (City Defendants), *see* Doc. 89, PgID 1170, but Hart does not make those allegations in the SAC. Hart has alleged that Rathbun and Holtz were employed as officers by the City and acted within the scope of their employment and pursuant to the policies and practices of the City. (Doc. 43-1, SAC ¶¶ 19-21). Hart also has conclusorily alleged that, pursuant to Parker's directives, Rathbun and Holtz looked for Hart and arrested him when Hart appeared at the City Police Department. (Doc. 43-1, SAC ¶¶ 63-65). None of those allegations support a finding that Rathbun or Holtz had any knowledge that would enable them to knowingly or recklessly disregard information that demonstrated Hart was not required to register on the SOR.

Despite the foregoing deficiencies, the Court notes that Hart has alleged that Rathbun and Holtz "sought a felony arrest warrant for Hart, for failing to comply with reporting duties" and "failure to comply with registration act" pursuant to M.C.L. § 28.725 and 28.729, even though those statutes did not apply to Hart. (Doc. 43-1, SAC

¶ 66) Hart further alleged that the warrant for his arrest was authorized by the Hillsdale Prosecutor's Office "on January 24, 2014, based upon false information provided deliberately, or with reckless disregard for the truth[.]" (Doc. 43-1, SAC ¶ 68).

For the reasons stated above, the Court finds that Plaintiff has sufficiently alleged claims against the individual Defendants for false arrest, malicious prosecution, and defamation. Plaintiff has alleged that each of the individual Defendants is a government official who was involved in causing the seizure of Plaintiff, in violation of the Fourth Amendment. Plaintiff has alleged that each of those persons knew or recklessly disregarded information to enable him or her to know that there was no probable cause to arrest Plaintiff based on the 2011 SORA amendment and that each of those persons "influenced, or participated in the decision to prosecute" Plaintiff in 2013 and/or 2014. Finally, Plaintiff's allegations satisfy the *Vakilian* requirements that (1) the individual Defendants stated a deliberate falsehood or showed reckless disregard for the truth, and (2) the allegedly false or omitted information was material to the finding of probable cause. *Vakilian*, 335 F.3d at 517.

Hart argues that the individual Defendants are not entitled to qualified immunity because they violated his constitutional right to be free from arrest and detention based on materially false information and that the individual Defendants had direct roles in one or both of Plaintiff's arrests and, therefore, prosecutions. As

discussed above, (1) Wahtola and Leva were responsible for maintaining accurate and reliable information regarding the identity of persons of persons on SOR and it was their responsibility to register the offenders themselves or notify the detective office if an offender failed to register for purposes of initiating criminal proceedings; (2) Wahtola required Hart to register as a sex offender in March 2012 (after the SORA Amendment); (3) Parker wrongfully sought a warrant to arrest, and then arrested, Hart in July 2013 for violation of SORA, when Parker knew or showed reckless disregard for the fact that Plaintiff did not need to register at that time; (4) Leva deliberately or recklessly and erroneously registered Hart as a sex offender in December 2013; (5) Parker advised Rathbun and Holtz in January 2014 that Hart had failed to verify his address for the SOR, even though Hart had no duty to do so; and (6) Rathbun and Holtz sought a felony arrest warrant for Hart – and arrested Hart –for failure to comply with reporting duties and SORA, even though Hart had no duty to do so.

The Court finds that Hart's allegations satisfy his burden to overcome the claims of the individual Defendants that they are entitled to qualified immunity. First, Hart has alleged that the individual Defendants violated Hart's constitutional right to be free from arrest in the absence of probable cause, a right clearly established by 2013. *See, e.g., Beck v. Ohio*, 379 U.S. 89, 91 (1964); *McCallum v. Geelhood*, No. 15-12676, 2017 WL 1250756, at *4 (E.D. Mich. Mar. 31, 2017) (citing *Donta v. Hooper*, 774 F.2d 716, 721 (6th Cir. 1985) ("Individuals have a clearly established federal right

not to be arrested without probable cause.")); U.S. CONST. amend. IV. Second, Hart has alleged that the individual Defendants violated Hart's constitutional not to be prosecuted based on false information they supplied to establish probable case, a right clearly established by 2013. *See, e.g., Hinchman v. Moore*, 312 F.3d 198, 205-06 (6th Cir. 2002) ("[f]alsifying facts to establish probable cause to arrest an prosecute an innocent person is . . . patently unconstitutional").

For these reasons, the motions to dismiss the individual Defendants is denied.

### B. *Monell* Claims against the City and the County

A municipal defendant can only be subject to direct liability if it causes a constitutional violation and harm to the plaintiff because it "implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by" that body's officers. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under Section 1983." *Id.* at 694. A plaintiff cannot allege a viable claim based solely on vicarious liability or *respondeat superior*. *Id.* at 691. The municipality's policy (or absence of one) must be a "moving force" in the deprivation of the plaintiff's constitutional rights and such policy must have arisen from

17

"deliberate indifference" to the rights of its citizens. *Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996).

In addition to policy or custom, the inadequacy of police training may serve as a basis for Section 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. *Canton v. Harris*, 489 U.S. 378, 388 (1989). The question is "whether the training program is adequate; and if it is not, the question becomes whether such inadequate training can justifiably be said to represent 'city policy.'" *Id.* at 390.

The Court finds Plaintiff's allegations sufficient to survive the motions to dismiss. Plaintiff has alleged that the County and the City failed to train their police officers, including the individual Defendants herein, with regard to when it was proper to issue warrant requests and to arrest for SORA violations following the 2011 amendments to SORA. (Doc. 43-1, SAC ¶ 98a). In light of the fact that the City and the County are SORA registering authorities, tasked with handling SORA-related information and violations (Doc. 43-1, SAC ¶¶ 39-42), such training is highly relevant to the job requirements and tasks of the individual Defendants and other officers. For these reasons, the Court finds that Plaintiff sufficiently alleges the first prong of the *Monell* liability test—that the City's and the County's "training or supervision was inadequate for the tasks performed" by its officers. *Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

Plaintiff further alleges that the City and the County had actual notice that its officers would use the information on the SOR to make decisions about arrests and prosecutions for SORA violations, and that its failure to train, supervise, and/or discipline its officers, would be highly likely to cause violations of the constitutional rights of members of the public. (Doc. 43-1,SAC ¶ 98b). This allegation that the City and the County knew of the possible consequences of failing to adequately train their officers satisfies the "deliberate indifference" requirement of the second prong of the test. *See Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999). Plaintiff satisfies the causation element of the test by pleading that the City's and the County's failure to properly train its officers in understanding changes to SORA ultimately led to (was the moving force behind) Plaintiff's arrest and resulting harm. (Doc. 43-1,SAC ¶¶ 39, 98).

The motions to dismiss the *Monell* claims against the City and the County are denied.

## IV. CONCLUSION

Accordingly,

IT IS HEREBY ORDERED that the Motion to Dismiss filed by the County Defendants [Dkt. No. 70] is **DENIED.**

IT IS FURTHER ORDERED that the Motion to Dismiss filed by the City

Defendants [Dkt. No. 83] is **DENIED**.

    IT IS ORDERED.

        S/Denise Page Hood
        Denise Page Hood
        Chief Judge, United States District Court

Dated: February 21, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 21, 2018, by electronic and/or ordinary mail.

        S/LaShawn R. Saulsberry
        Case Manager