UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY HART,

    Plaintiff,

Case No. 16-10253

v.

HON. DENISE PAGE HOOD

COUNTY OF HILLSDALE, et al.,

    Defendants.

_____/

**ORDER GRANTING PLAINTIFF'S CORRECTED
MOTION FOR RECONSIDERATION [#75],[1] VACATING
ORDER DISMISSING DEFENDANTS MARINOFF AND
KELLEY [#66], DENYING MOTION TO DISMISS FILED
BY MARINOFF AND KELLEY [#27] and REQUIRING
PLAINTIFF TO FILE SECOND AMENDED COMPLAINT**

**I.   INTRODUCTION**

Plaintiff Anthony Hart filed a complaint alleging that he was wrongfully arrested, prosecuted, and defamed for failing to register his proper residency with the Michigan Sex Offender Registry ("SOR"). In his original complaint, his amended complaint, and his proposed second amended complaint, Plaintiff named two Michigan State Police analysts as Defendants: Marci Kelley ("Kelley") and Melissa

---

[1] On April 14, 2017, Plaintiff filed a Motion for Reconsideration. [Dkt. No. 74] On April 18, 2017, Plaintiff filed a Corrected Motion for Reconsideration. [Dkt. No. 75] The Court will consider and decide the Corrected Motion for Reconsideration and strike the first Motion for Reconsideration.

Marinoff ("Marinoff"). In response to the amended complaint, Kelley and Marinoff filed a motion to dismiss based on qualified immunity. Plaintiff then filed a motion for leave to file a proposed second amended complaint. The Court issued two orders: (1) the first granting the motion to dismiss filed by Kelley and Marinoff [Dkt. No. 66]; and (2) the second denying leave to file Hart's June 21, 2016 proposed second amended complaint against Kelley and Marinoff, but granting leave to file a second amended complaint as to the Defendants other than Kelley and Marinoff. [Dkt. No. 68] Plaintiff filed a timely Motion for Reconsideration – and then a Corrected Motion for Reconsideration [Dkt. No. 75] – as it pertains to those two Orders.

## II. BACKGROUND

The following facts are based on the allegations by Plaintiff, all of which must be accepted as true for purposes of deciding the motions discussed herein.

Plaintiff violated MCL § 750.520(e) when he was 16 years old, though by the time of his juvenile conviction for fourth degree criminal sexual conduct (a Tier II offense), he was 17 years old. At that time, the Michigan Sex Offender Registration Act, MCL § 28.721 ("SORA"), required that Plaintiff register his address bi-annually for 25 years due to his conviction. SORA was amended as of July 1, 2011, and offenders adjudicated of a Tier II offense as juveniles were no longer required to

2

register. It is undisputed that, as of July 1, 2011, Plaintiff no longer had a legal obligation to register his residency with the SOR.

The Michigan State Police ("MSP") was required to remove Plaintiff from the SOR following the 2011 SORA amendment. MSP employees did not properly remove Plaintiff's name from the list. Neither the Hillsdale County Sheriff Department nor the City of Hillsdale Police Department removed Plaintiff's information from the SOR or took any action to cause such a removal. Neither the Michigan State Police (MSP), Defendant Hillsdale County, nor Defendant City informed Plaintiff that, pursuant to a change in the law, he was no longer legally required to report and register. (Doc. 43-1, SAC ¶¶ 38-39).

Rathbun and Holtz were, at all times relevant herein, employed by the City as officers with the Hillsdale Police Department and acted within the scope of their employment pursuant to the policies and practices of the City. The City, through the Hillsdale Police Department serves as a SORA local registering authority. As a registering authority, the City—through its officers, including Rathbun and Holtz—is responsible for collecting and maintaining extensive and detailed information on all persons required to register under SORA, including Plaintiff. M.C.L. §§ 28.722(n) and 28.727 et seq.

3

Wahtola and Leva were both County Sheriff's Department registration officials, responsible for receiving and maintaining detailed information on the identity of proper registrants and those persons who should not have been included on the SOR, including criminal history and SORA-related obligations of each registered sex offender residing in Hillsdale County. (Doc. 43-1, SAC ¶¶ 41-42). See M.C.L. §§ 28.722(n) and 28.727 et seq. SORA registration is required to include, among other things, the text of the provision of law that defines the criminal offense for which the sex offender is registered, the offender's tier classification, and the individual's complete criminal history record, including the dates of all arrests and convictions, in addition to a summary of the offender's convictions for all SORA-listed offenses. M.C.L. 28.727(1)(n); (2)(b), (d) and (f). Plaintiff has alleged that, as local SORA registering officials, Wahtola and Leva were expected to be familiar with developments in the law concerning SORA. Based on those expectations, Wahtola and Leva possessed all the necessary information to know that, after the 2011 Amendment to the SORA, Plaintiff was no longer required to register as a sex offender.

On March 4, 2012, Wahtola, either deliberately or with reckless disregard for the truth contained in the information available to her, required Plaintiff to register as a sex offender when he was no longer required to do so. (Doc. 43-1, SAC ¶ 43). In so

doing, Wahtola knowingly propagated false information that would later be used to erroneously establish probable cause for Plaintiff's arrests and prosecutions.

On July 17, 2013, Leva, deliberately or with reckless disregard for all the information she possessed indicating that Plaintiff was no longer required to register as a sex offender, advised Parker that Plaintiff had registered an incorrect address. (County Incident Report, Doc. 70-2, PgID 693). Parker then used that information to obtain a warrant for Plaintiff's arrest. *Id.* On December 30, 2013, when Plaintiff did not report to the Sheriff's Department to register, Leva herself registered Plaintiff as a sex offender, and transmitted this information to the MSP (Doc. 43-1, SAC ¶ 62), thereby falsely conveying that Plaintiff had committed a criminal act, and knowingly propagating false information to be used to arrest and prosecute Plaintiff.

From July 2011 through July 2013, Plaintiff continued to register on the SOR, including identifying his address. On July 5, 2013, unaware that he was no longer required to register his address with the SOR, Plaintiff erroneously registered his address as "79 Bulldog" in Hillsdale. Plaintiff's actual address was "76 Bulldog" in Hillsdale.

On July 17, 2013, Parker arrested Plaintiff for violating SORA by listing an incorrect address. At the time Parker arrested him, Parker was aware of Plaintiff's computerized criminal history and his SOR documents—documents that included

5

Plaintiff's birth date, the date of his 2001 conviction, and his designated offender tier level (Tier II) that reflected that Plaintiff was 17 years old in 2001, such that Plaintiff was no longer required to register as a sex offender. (*Id.* at ¶ 56) Plaintiff alleges that, despite that knowledge, Parker, deliberately or with reckless disregard for the truth, signed a warrant request and transmitted it to the County Prosecutor's Office for the purpose of obtaining an arrest warrant for Plaintiff on the basis of an alleged violation of a SORA requirement to which Parker knew Plaintiff was not subject. *Id.* at ¶ 57. The warrant was approved by the County Prosecutor's Office on July 18, 2013. On August 14, 2013, Plaintiff entered a plea of nolo contendere, was found guilty of one count of failure to register pursuant to SORA (MCL § 28.279), and was placed on probation.

From July 2013 through December 2013, Plaintiff continued to register as a sex offender with local registering authorities (Hillsdale County). On January 23, 2014, Parker advised Rathbun and Holtz that Plaintiff had failed to verify his address for the SOR, notwithstanding the fact that he knew Plaintiff was under no obligation to register, falsely accusing Plaintiff of criminal acts. *Id.* at ¶ 63. Parker's false representation was used to manufacture probable cause for a warrant to arrest Plaintiff. On January 23, 2014, after learning that the City Police were looking for him, Plaintiff voluntarily appeared at the County Sheriff's Department, where he was met by

6

Rathbun and Holtz and wrongfully arrested for failing to comply with SORA reporting duties. *Id*. at ¶ 65. On February 10, 2014, MSP analyst Marci Kelley transmitted to Rathbun a certified copy of Plaintiff's "Sex Offender Registration" records, which falsely stated that Plaintiff was still required to report and register on a semi-annual basis until February 20, 2054—a duration that did not exist, either prior to or after the 2011 amendment. *Id*. at ¶¶ 69, 71.

Plaintiff's SOR records included his birth date, the date his registration obligation began, the statute under which he had been convicted, his designation as a Tier II offender, as well as the registration end date of February 20, 2054, which Plaintiff suggests made it blatantly obvious that the record was inaccurate and unreliable. *Id*. at ¶ 70. On the faulty advice of his attorneys, Plaintiff pleaded guilty to the felony of failure to register and, on March 17, 2014, was sentenced to 16-24 months in state prison and ordered to pay $1,026.94 in fines, costs, and restitution. *Id*. at ¶¶ 72-74. Plaintiff was wrongfully incarcerated for 17 months, until August 2015.

In August 2015, an agent of the Michigan Department of Corrections became aware that Plaintiff was being detained wrongfully and notified the MSP. *Id*. at ¶¶ 75-76. On August 25, 2015, Hillsdale County Circuit Court Judge Michael Smith vacated Plaintiff's 2014 guilty plea, conviction and sentence and the following day,

Plaintiff was released from prison. *Id.* at ¶¶ 79-80. On November 17, 2015, Plaintiff's 2013 guilty plea, conviction and sentence were also vacated. *Id.* at ¶ 81.

At the time of Plaintiff's 2013 and 2014 wrongful arrests and prosecution, the MSP, the County's, and the City's law enforcement databases contained all the necessary information to indicate that Plaintiff was no longer required to register as a sex offender after July 2011.

## III. ANALYSIS

### A. Legal Standard

In order to obtain reconsideration of a particular matter, the party bringing the motion for reconsideration must: (1) demonstrate a palpable defect by which the Court and the parties have been misled; and (2) demonstrate that "correcting the defect will result in a different disposition of the case." E.D. Mich. L.R. 7.1(h)(3). *See also Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004); *Aetna Cas. and Sur. Co. v. Dow Chemical Co.*, 44 F.Supp.2d 865, 866 (E.D. Mich. 1999); *Kirkpatrick v. General Electric*, 969 F.Supp. 457, 459 (E.D. Mich. 1997).

A "palpable defect" is a "defect which is obvious, clear, unmistakable, manifest, or plain." *Olson v. The Home Depot*, 321 F.Supp.2d 872, 874 (E.D. Mich. 2004). The movant must also demonstrate that the disposition of the case would be different if the

palpable defect were cured. E.D. Mich. L.R. 7.1(h)(3). *Brown v. Walgreens Income Protective Plan for Store Managers*, No. 10-CV-14442, 2013 WL 1040530, at *1 (E.D. Mich. Mar. 15, 2013). "[T]he court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the Court, either expressly or by reasonable implication." E.D. Mich. L.R. 7.1(h)(3).

**B.     Analysis**

In Plaintiff's Amended Complaint, "Plaintiff only generally alleged that [Marinoff and Kelley] caused things to happen, with no allegation of anything more than mistake or error, and Plaintiff did not specify that [Marinoff and Kelley] were required to perform in a ceratin manner." [Dkt. No. 68, PgID 647] Specifically, Plaintiff failed to allege that Marinoff or Kelley took any action or engaged in any conduct that was deliberate or taken with reckless disregard for the truth for the purpose of establishing probable cause that Plaintiff violated obligations under SORA. For that reason, the Court granted Marinoff's and Kelley's Motion to Dismiss pursuant to the qualified immunity doctrine. [*See* Dkt. No. 66] Having reviewed the Amended Complaint for a second time in light of Plaintiff's Corrected Motion for Reconsideration, the Court again concludes there was no palpable defect by which the Court or the parties were misled. Plaintiff's allegations in the Amended Complaint

9

were not sufficient to overcome the qualified immunity defense asserted by Marinoff and Kelley.

The Court denied Plaintiff's Motion for Leave to File a Second Amended Complaint as to Marinoff and Kelley. The Court did so after Plaintiff did not respond to the arguments of Marinoff and Kelley that the proposed amendments were futile as they related to the claims against Marinoff and Kelley. The Court's ruling was based on a finding that Plaintiff's "conclusory allegations [in the proposed Second Amended Complaint] do not overcome the State Defendants' entitlement to qualified immunity because Plaintiff has not demonstrated that there was a clearly established constitutional right to have the SOR maintained accurately when there was no reckless or malicious action by the relevant actors (the State Defendants)." [Dkt. No. 68, PgID 650] For the reasons that follow, the Court concludes that: (1) its ruling was based on a palpable defect; and (2) if that defect was cured, the result would be a different disposition of the case as it relates to Marinoff and Kelley.

Plaintiff argues, and the Court agrees, that the focus on whether "there was a clearly established constitutional right to have the SOR maintained accurately" did not fully encompass Plaintiff's claims. As set forth in the Court's previous Order regarding qualified immunity of Marinoff and Kelley:

> "[T]he test for qualified immunity has only two prongs—whether the defendant violated a constitutional right and whether the right at issue

10

was clearly established." *Brown v. Lewis*, 779 F.3d 401, 417 (6th Cir. 2015) (citing *Plumhoff v. Rickard*, — U.S. —, 134 S. Ct. 2012, 2020 (2014), and *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." *Creighton,* 483 U.S. at 640. This standard does not require the very action in question to have previously been held unlawful, only that its unlawfulness be apparent in light of pre-existing law. *Id.* (citing *Mitchell* v. *Forsyth,* 472 U.S. 511, 535 n.12, (1985)).

Once a government official has raised the defense of qualified immunity, the plaintiff "bears the ultimate burden of proof to show that the individual officers are not entitled to qualified immunity." *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 494 (6th Cir. 2012) (citation omitted). A plaintiff must also establish that each individual defendant was "personally involved" in the specific constitutional violation. *See Salehphour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998); *Bennett v. Schroeder*, 99 F. App'x 707, 712-13 (6th Cir. 2004) (unpublished) ("It is well-settled that to state a cognizable Section 1983 claim, the plaintiff must allege some personal involvement by the each of the named defendants").

In this case, to establish the violation of a constitutional right, Hart must establish: (1) the State Defendants [Marinoff and Kelley] stated a deliberate falsehood or showed reckless disregard for the truth, and (2) the allegedly false or omitted information was material to the finding of probable cause. *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003) (citations omitted).

[Dkt. No. 66, PgID 626-27]

In reviewing the proposed Second Amended Complaint attached to Plaintiff's June 21, 2016 Motion for Leave to File a Second Amended Complaint, the Court again finds there is no dispute that Plaintiff has alleged that the false information was

material to the finding of probable cause. The Court now concludes, however, that Plaintiff has sufficiently alleged that Kelley and Marinoff stated a deliberate falsehood or showed reckless disregard for the truth for the purpose of establishing probable cause for his arrest and prosecution. Specifically, Plaintiff has alleged that:

A. Kelley and Marinoff had a duty (were required) to maintain the SOR "so that it was reasonably accurate and reliable and likely not to result in the arrest and/or criminal prosecution of persons who were not properly and/or appropriately listed" [Paragraphs 22];

B. Kelley and Marinoff "were required to accurately and reliably maintain the SOR and inform those listed on the registry of their own duties under the law. Instead, they deliberately and/or recklessly produced and propounded a SOR that they knew to be flawed, inaccurate and unreliable and, as such, likely to result in arrest, conviction and incarceration for non-existent crimes– i.e. without probable cause" [Paragraph 35];

C. Kelley and Marinoff, "as custodians of the SOR, were required to conscientiously remove and/or ensure the removal of all persons no longer required to register, in particular HART, from the SOR after July 1, 2011" [Paragraph 37];

D. Kelley and Marinoff "deliberately failed to conscientiously undertake the kind of procedures necessary to remove all ineligible persons, in particular HART herein, from the SOR and inform them of such. Further they unreasonably failed to advise courts, prosecutors, and others that the SOR was likely inaccurate and unreliable and that, as a consequence, HART was not responsible for advising law enforcement as to his whereabouts because he should no longer be on the list" [Paragraph 38];

E. "On February 20, 2014, Defendant KELLEY attested to the validity of HART's purported "Sex Offender Registry Certified Record" and transmitted those records to RATHBUN" [Paragraph 69];

    F.    "Those records included HART's accurate birth date, the date his registration obligation began, the statute under which he had been convicted, and his designation as a Tier II offender. Inexplicably, HART's registration end date was listed as February 20, 2054, making him obligated to register for 52 ½ years, a period that did not conform to SORA either pre or post the 2011 amendment. Furthermore, this registration end date had been altered from a 2010 version of HART's "Sex Offender Registry Certified Record," also produced and transmitted by Kelley, which listed the registration end date as August 3, 2026" [Paragraph 70]; and

    G.    "Despite having clear information at her disposal alerting her that HART was no longer required to register and should not have been on the SOR, KELLEY, using the vehicle of the SOR records, deliberately, maliciously and/or with reckless disregard for the truth, falsely attested that HART was required to register on a semi-annual basis from August 3, 2001 through February 20, 2054 – a duration that did not even exist under the pre or post-2011 amendment SORA" [Paragraph 71].

The Court finds that, unlike the allegations in the Amended Complaint, the foregoing allegations set forth by Plaintiff in the June 21, 2016 proposed Second Amended Complaint sufficiently allege that Marinoff and Kelley deliberately or with reckless disregard for the truth supplied false information to law enforcement that had the purpose of creating probable cause, resulting in false arrest, wrongful prosecution and defamation. The Court concludes that such allegations, at this point in the proceedings, are sufficient to survive the qualified immunity defense asserted by Marinoff and Kelley with respect to Plaintiff's claims.

For the reasons stated above, the Court grants Plaintiff's Motion for Reconsideration with respect to Order denying his Motion for Leave to File a Second Amended Complaint as to Marinoff and Kelley.

Based on the Court's ruling, (1) the Court vacates its Order granting Marinoff's and Kelley's Motion to Dismiss based on qualified immunity; (2) denies Marinoff's and Kelley's Motion to Dismiss; and (3) holds that Plaintiff may file a Second Amended Complaint identical to the proposed Second Amended Complaint [*See* Dkt. No. 43-1] attached to his June 21, 2016 Motion for Leave to File a Second Amended Complaint, except that former Defendants Attorney Kimberley Burger and Parker, Hayes, & Lovinger P.C. need not be named in the caption or as parties against whom relief is sought.

## IV.  CONCLUSION

Accordingly,

IT IS ORDERED that the Clerk of the Court shall **STRIKE** Plaintiff's Motion for Reconsideration [Dkt. No. 74] from the docket.

IT IS FURTHER ORDERED that Plaintiff's Corrected Motion for Reconsideration [Dkt. No. 75] is **GRANTED**.

IT IS FURTHER ORDERED that the Court's Order Granting Defendants Marinoff's and Kelley's Motion to Dismiss [Dkt. No. 66] is **VACATED**.

IT IS FURTHER ORDERED that the Motion to Dismiss filed by Marinoff and Kelley [Dkt. No. 27] is **DENIED**.

IT IS FURTHER ORDERED that Plaintiff **MUST FILE** his Second Amended Complaint within seven (7) days of the date of this Order; provided that such Second Amended Complaint shall be identical to the proposed Second Amended Complaint attached to his June 21, 2016 Motion for Leave to File a Second Amended Complaint, except that former Defendants Attorney Kimberley Burger and Parker, Hayes, & Lovinger P.C. need not be named in the caption or as parties against whom relief is sought.

IT IS ORDERED.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: March 30, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 30, 2018, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager