```
 1              UNITED STATES OF AMERICA

 2            EASTERN DISTRICT OF MICHIGAN

 3                 SOUTHERN DIVISION

 4   ANTHONY HART,

 5            Plaintiff

 6       V                        Case No. 16-10253

 7   COUNTY OF HILLSDALE,

 8   A Municipal Corporation;

 9   AGENTS CHRISTINE WAHTOLA,

10   KWINN LEVA, and

11   LT. TIMOTHY PARKER;

12   CITY OF HILLSDALE,

13   OFFICER SHELBY RATHBUN,

14   OFFICER TODD HOLTZ; and

15   WATCH SYSTEMS, L.L.C.,

16        A Louisiana corporation,

17            Defendants.

18   - - - - - - - - - - - - - - - - -/

19                MOTIONS HEARING

20       BEFORE CHIEF JUDGE DENISE PAGE HOOD

21             U.S. DISTRICT COURT

22      231 W. LAFAYETTE STREET, COURTROOM 730

23             DETROIT, MICHIGAN

24          WEDNESDAY, AUGUST 2, 2017

25
```

```
 1                  (APPEARANCES CONTINUED)
 2    FOR THE PLAINTIFF:          JULIE HURWITZ,
 3                                HUWAIDA ARRAH,
 4                                GOODMAN & HURWITZ, PC
 5                                1394 E. JEFFERSON AVENUE
 6                                DETROIT, MI 48207
 7                                     And
 8                                STEVEN T. BUDAJ,
 9                                2915 CADILLAC TOWER
10                                65 CADILLAC SQUARE
11                                DETROIT, MI 48226
12    FOR DEFENDANTS
13    HILLSDALE COUNTY, WAHTOLA,
14    LEVA, PARKER:               ANDREW J. BREGE,
15                                JOHNSON ROSATI
16                                822 CENTENNIAL WAY
17                                   SUITE 270
18                                LANSING, MI 48917
19    FOR THE DEFENDANTS
20    CITY OF HILLSDALE,
21    RATHBUN, HOLTZ:            ROGER A. SMITH
22                                MATTA BLAIR, PLC
23                                39572 WOODWARD AVENUE
24                                   SUITE 200
25                                BLOOMFIELD HILLS, MI 48304
```

```
 1                   (APPEARANCES CONTINUED)

 2   FOR THE DEFENDANT

 3   WATCH SYSTEMS, L.L.C.:        DALE A. ROBINSON,

 4                                 RUTLEDGE, MANION

 5                                 FORT WASHINGTON PLAZA

 6                                    SUITE 1600

 7                                 333 WEST FORT STREET

 8                                 DETROIT, MI 48226

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    Wednesday, August 2, 2017

 2                    Detroit, Michigan

 3                    At approximately 3:15 p.m.

 4                    THE COURT:  Is everyone here on Hart versus

 5      Hillsdale?

 6                    This is case number 16-10253, and it is a

 7      Motion to Dismiss filed by the County Defendants and the

 8      City Defendants; is that correct?

 9                    Who's here for the Plaintiff?

10                    MS. HURWITZ:  Julie Hurwitz for the

11      Plaintiff.  Huwaida Arrah and Steven Budaj also

12      appearing on behalf of the Plaintiff.

13                    THE COURT:  How do you spell your last name?

14                    MR. ARRAH:  It's A R R A H.

15                    THE COURT:  And for the Defense.

16                    MR. BREGE:  Andrew Brege for the County

17      Defendants, Parker, Wahtola and Leva.

18                    MR. SMITH:  Roger Smith, Your Honor, for the

19      Defendants Rathbun, Holtz and the City of Hillsdale.

20                    MR. ROBINSON:  Dale Robinson on behalf of

21      Watch Systems.

22                    THE COURT:  This is the Motions to Dismiss,

23      as I said, docket numbers 70 and 83.

24                    Who is going to go first?

25                    MR. BREGE:  Your Honor, Andrew Brege on
```

1    behalf of the County Defendants.  I will go first.

2             I don't want to reiterate everything in the

3    brief, but at the beginning I would like to address a, I

4    suppose, housekeeping matter.

5             Our motion was filed as a 12(b)(6) motion

6    in response to Plaintiff's Second Amended Complaint,

7    which was attached to their motion requesting they file

8    a Second Amended Complaint and this Court granted that

9    motion at least with respect to the remaining

10   Defendants.

11            That Second Amended Complaint hasn't, I

12   suppose, been technically filed yet, so I would request

13   that to the extent this Court considers our motion as

14   one for 12(c) against the First Amended Complaint, there

15   are no substantive differences at least on the facts

16   between the First Amended Complaint and the Second

17   Amended Complaint.  The only differences are Plaintiff's

18   conclusive allegations that Defendants acted

19   deliberately or inaccurately.

20            The facts haven't changed one bit.  The four

21   Counts haven't changed one bit.

22            So whether this Court considers it a 12

23   (b)(6) motion against the Second Amended Complaint or a

24   12(c) motion against the First Amended Complaint, the

25   arguments are the same.

1          We've also raised it as a Rule 56 motion

2     because we did attach additional material, but in

3     Plaintiff's response, they conceded the materials we

4     rely on were public records and weren't essential to

5     their claim, so it could be considered a (b)(6) motion.

6          So with that, I want to focus on the issue

7     of qualified immunity because that's if Count 1 and

8     Count 2 can't proceed against the individuals, Count 3

9     and Count 4 aren't going to go forward.

10          The Supreme Court has recently stated in

11     White versus Pauley {ph} when it cautions lower courts

12     against defining clearly established rights too broadly

13     and said, quote, in the last five years, this Court has

14     issued a number of opinions reversing federal courts in

15     qualified immunity cases.  The Court has found this

16     necessary both because qualified immunity is important

17     to society as a whole and because as immunity from suit

18     qualified immunity is effectively lost if the cases are

19     erroneously permitted to go to trial.

20          Today it is again necessary to reiterate the

21     long-standing principle that clearly standing law should

22     not be defined at a high level of generality.

23          As this Court explained decades ago, the

24     clearly established law must be analyzed against the

25     facts of the case; otherwise, plaintiffs would be able

1    to converse the rule of qualified immunity.  The U.S.

2    cite is not out for that case but I believe it is 137

3    S.Ct 538 issued earlier in 2017.

4             I raise that because once qualified immunity

5    is raised, it is Plaintiff's burden then to show that

6    qualified immunity should not be applied by pointing to

7    these particularized cases.  Some things that are or

8    similar circumstances that have happened to put a

9    reasonable officer on notice that what they were doing

10   was clearly established.  Plaintiff has not done that in

11   this case.

12            In this case, what Plaintiff has to do in

13   order to establish that Lt. Parker did not have probable

14   cause when he arrested Plaintiff in 2013, to overcome

15   qualified immunity, Plaintiff must establish that Lt.

16   Parker stated a deliberate falsehood or showed reckless

17   disregard for the truth and that the alleged falsehood

18   or omitted information was material for a finding of

19   probable cause.

20            If you look at the facts as pled and based

21   on the records attached to our motion, what Lt. Parker

22   had was Plaintiff's sex offender registry information

23   which stated he was convicted as an adult which clearly

24   stated he still was under an obligation to register.

25            We know that Plaintiff did in fact register

1   but he registered an incorrect address.  So we know all

2   of that.

3              That sex offender registry, as this Court is

4   well aware from the motions filed and the previous

5   hearings we have had is maintained by the state of

6   Michigan.  The statutory scheme sets forth that it is

7   maintained by the state of Michigan.

8              So Lt. Parker has that information when he

9   arrests Plaintiff.

10             Plaintiff, it is admitted, had an incorrect

11  address and all of that information was then transferred

12  over to the prosecutor.

13             Exhibit 1 to our motion is Lt. Parker's

14  report, and in his report, the last thing he says before

15  his supplement on the first full page of the narrative

16  of his report is a warrant request was sent to the

17  prosecutor's office along with a copy of this report

18  along with his CCH and SOR documents.

19             So Plaintiff's theory is that Lt. Parker

20  should have known that Plaintiff didn't have to register

21  because of information that was contained in his

22  criminal history, his CCH and on the SOR documents.

23             The problem is is that information was never

24  omitted from the prosecutor, it was provided to the

25  prosecutor.  The prosecutor still, with all that same

1    information that Lt. Parker had, still issued the

2    warrant, still prosecuted Plaintiff and Plaintiff still

3    pled to that.

4              So there is nothing that Lt. Parker withheld

5    information or falsified information to Plaintiff's file

6    where the SOR documentation indicates that Plaintiff has

7    to register.

8              So when Lt. Parker says that he relied on

9    the SOR information, he is not saying anything false, he

10   is reporting what that record says.  It is a legal

11   conclusion whether Plaintiff was actually in violation

12   of the law.

13             It is not up to Lt. Parker to make that

14   conclusion, it is up to the prosecutor and the judge who

15   ultimately dealt with that case.  But Lt. Parker didn't

16   withhold that information.

17             The prosecutor then issued the warrant and

18   Plaintiff eventually pled to that charge.

19             Then if we look at the four arrests where

20   Plaintiff is again alleging it is Lt. Parker who is

21   feeding this false information.

22             What makes the four arrests and claim even

23   more troubling is that by that point, Plaintiff has

24   already been prosecuted and had pled and which the Court

25   had entered the judgment.

1           Plaintiff was sentenced to probation and had

2    the fines and costs that were applied.

3           So now there is a court order from a judge

4    that says Plaintiff has an obligation to register under

5    the SORA.

6           He violated that.  I don't know how it could

7    possibly be argued that Lt. Parker knows that the judge

8    was wrong, that the prosecutor was wrong, that Plaintiff

9    himself was wrong and plaintiff's attorney were all

10   wrong.

11          So with all of that, I don't believe that

12   there is any valid basis to deny qualified immunity to

13   all of the Defendants in this case on the theory that

14   the information they provided the prosecutor was false.

15   None of the information that they provided was

16   inaccurate.

17          The only thing that was inaccurate was

18   whether or not the actual SOR was accurate, but

19   Plaintiff can't and hasn't cited any case that indicates

20   that a police officer is not entitled to rely on a state

21   sex offender registry that is maintained by the state

22   and where there is nothing that indicates that they

23   shouldn't be allowed to rely on their fellow officers

24   and a certified state document.

25          And if you look at Exhibit, I believe it is

1    Exhibit J of our co-defendant's brief, they actually

2    have a couple of Plaintiff's SOR documentation attached

3    to the brief.  It is identified as a certified public

4    record that identifies and that lists Plaintiff as an

5    adult offender with the requirement to register.

6              So it is Exhibit G to the co-defendant's

7    brief document number 83-8.

8              So taking all of that information together,

9    I don't believe there is any reasonable basis to deny

10   qualified immunity to the individuals.

11             The Supreme Court in Heien versus North

12   Carolina, says, quote:

13             "To be reasonable is not to be perfect, and

14             so the Fourth Amendment allows for some

15             mistakes on the part of government

16             officials, giving them 'fair leeway for

17             enforcing the law in the community's

18             protection'."

19             That is 135 S.Ct. 530 at 536.

20             Here, Lt. Parker, if he has, it was a

21   mistake of relying on all of the information that he

22   had, which included Plaintiff's own objections of

23   registering when he apparently did not have a legal

24   obligation to continue to register.

25             So unless the Court has any specific

1    questions for me, I rely on everything that has been

2    presented in the court papers and incorporate by

3    reference anything else that is set forth.

4              THE COURT:  Okay.  Thank you.

5              Do you wish to respond?

6              MR. SMITH:  Again, Your Honor, Roger Smith

7    on behalf of the City Defendants.

8              I'm certainly not going to belabor the

9    issues any further.  I adopt Counsel's recitation of the

10   facts.

11             I also would indicate and remind the Court

12   that when it dealt with the dismissed Defendants

13   Marinoff and Kelly on behalf of the Michigan State

14   Police, this Court already ruled in that context that

15   regardless of whether we're dealing with the

16   then-existing allegations in the First Amended Complaint

17   or the proffered Second Amended Complaint, that neither

18   of them contained anything other than conclusions or

19   allegations insufficient to overcome an individual's

20   entitlement to qualified immunity.  And it would be

21   futile to consider the allegations in the Second Amended

22   Complaint as proper because they didn't add any factual

23   support for the allegations.

24             So that is the same situation we find

25   ourselves in here today regardless of whether we're

1   dealing with the First Amended Complaint or the

2   seemingly authorized Second Amended Complaint but not

3   yet filed.

4          I would also point out to the Court that my

5   clients, officers Rathbun and Holtz, are even further

6   removed from the meat of this case because not only

7   would we rely on all the documentation that Lt. Parker

8   has but we also rely upon his information as conveyed to

9   us that there was probable cause to support the arrest

10   in 2014 which is the only arrest that my clients are

11   involved in.

12          And on that date, the documents, the

13   exhibits attached to the motion would reveal that not

14   only did we rely upon the sex offender register

15   information, information conveyed by Lt. Parker, but we

16   also asked the Plaintiff himself whether or not he was,

17   in fact, residing at the address that he reported that

18   he was residing at in the sex offender registry

19   document.  And he responded in the negative lending even

20   further credence or basis for probable cause for his

21   arrest.

22          I would also indicate the pleading

23   deficiencies contain no allegations against Defendants

24   Rathbun or Holtz to suggest that Plaintiff was not a

25   proper subject of the sex offender registry in 2014 at

1   the time of his arrest.  Nor is there any suggestion or

2   factual basis to support a suggestion that my clients

3   acted with malice or ill-will to overcome qualified

4   immunity.

5            As Counsel indicated, the individual

6   Defendants are entitled to make reasonable mistakes in

7   reliance upon transmittal or direction from others and

8   there is no clear established constitutional right

9   requiring that officers Rathbun and Holtz back in 2014

10  go beyond the performance of the statutorily-required

11  duties on the part of Michigan State Police to maintain

12  that sex offender registry and to maintain the

13  information accurately or the direction of the Hillsdale

14  County Sheriff's Department in this case provided to

15  officer Rathbun that the Plaintiff should be arrested

16  in 2014.

17            The prosecutor who reviewed it, the

18  Plaintiff's own criminal defense attorney and two

19  separate and distinct justices or magistrates who

20  independently evaluated the existence of probable cause

21  for the 2014 arrest and the underlying charge faced by

22  the Plaintiff to determine if there was some type of

23  relevant change in the law applicable to the Plaintiff.

24            I would also point out that Plaintiff seems

25  to agree that that data information on the sex offender

1    registration form provided by the Michigan State Police

2    should have somehow provided officer Rathbun with enough

3    data to have potentially gleaned through the performance

4    of some significant mathematical computation that the

5    Plaintiff was no longer, in fact, obligated to register

6    under the Act based upon the 2011 amendment to the Act.

7            I would point out to the Court that even if

8    somehow officer Rathbun could have divined that the

9    Plaintiff was no longer entitled to register, even

10   though the critical component, the date of conviction,

11   was not on that document which would be absolutely

12   necessary to do this mathematical computation.

13           All that does is raise an issue of

14   negligence or unreasonable conduct on the part of

15   officer Rathbun and certainly doesn't suggest any

16   intentional or act of deliberate indifference to the

17   rights of the Plaintiff.

18           Finally I would point out under Monell, if

19   there are no constitutional deprivations committed by

20   the individual officer, there is no city of Hillsdale in

21   this case, but also that the only incident cited by the

22   Plaintiff is in fact a 2014 arrest of him by officer

23   Rathbun.

24           And the case law clearly requires that if

25   you're going to rely upon a policy or custom to

1   establish a Monell liability against a defendant, it has

2   to be the product of a clear and persistent pattern.

3   And there is not even a hint of a pattern in this case.

4   The only arguable evidence they have is this one

5   isolated circumstance which is insufficient to create a

6   liability under Section 1983.

7            And with that, Your Honor, I will also defer

8   to the comprehensive pleadings that I filed in this

9   matter unless the Court has any questions.

10           THE COURT:  No, I don't.  Thank you very

11  much.

12           MR. ROBINSON:  Your Honor, I don't have a

13  motion pending today, but just for background for the

14  Court, I came into the case late, I had been retained by

15  the Watch System, Ms. Hurwitz asked and you gave me a

16  time to file an answer to an amended complaint that was

17  due.  However, I think the Court's ruling on some of the

18  rulings will impact the claims against my client.  And

19  once I have the second amended complaint filed, I can

20  then file my motion in response to that.  But I have not

21  been served with the second amended complaint.

22           THE COURT:  All right, thank you.

23           You may respond.

24           MS. HURWITZ:  Thank you and good afternoon,

25  Your Honor.

1          Your Honor, first I would like to reiterate

2    that we are here on a motion to dismiss although both

3    Defendants, City and County, presented their motions as

4    hybrid motions, motions to dismiss or alternatively for

5    summary judgment.  This should be considered as a motion

6    to dismiss.

7          We have not had a chance to submit any

8    information to make our case so that you can consider

9    this as a motion for summary judgment.

10          And also significantly, there has been no

11   discovery yet.

12          And the Sixth Circuit has repeatedly said

13   that in certain cases where there has not been, where

14   there has not been discovery, it is premature to grant

15   or to consider a motion for summary judgment and has

16   reversed a lower court's cases on that basis.

17          So in considering a motion as a motion to

18   dismiss, the question is are there sufficient facts to

19   make out a plausible claim for relief.  Not a definite

20   claim, not a possible claim, a plausible claim for

21   relief which is what Plaintiff has alleged.

22          Plaintiff has alleged that these Defendants,

23   both City, County and their officers, knew that Anthony

24   Hart was no longer subject to the requirements of the

25   Sex Offender Registry Act and yet they proceeded to

1    arrest him to instigate his prosecution.

2              How did they know?  What we have said is

3    these Defendants knew Anthony Hart.  They are

4    registered, both the City and County are considered

5    under the SORA as registered authorities.  That means

6    they are responsible for taking in the information of

7    every sex offender that is required to register in their

8    city, in their county.

9              And that if one looks at the SORA and its

10   requirements, which is cited in our brief, they have the

11   responsibility to have his entire criminal history, the

12   dates, the specific facts of the crime for which he was

13   convicted and for which he has to be registered.  They

14   have all of that.

15             And on top of that, we have learned they

16   have his entire criminal, his entire criminal history

17   because they know him.  He is a life-long resident of

18   that County and they have come into contact plenty of

19   times with him.  They personally knew him.

20             And on top of that, then the law was changed

21   in 2011.  The officers in the state are charged with

22   enforcing the law.

23             They can't say they did not know the law was

24   changed and they can't say they did not know Anthony

25   Hart and know all of his information including his date

1    of birth.

2                One of these officers in fact came into

3    contact with him on a separate issue only a year before

4    and knew he was only 15 years old, the year before this

5    particular crime.

6                And therefore, it is kind of beyond belief

7    for them to allege they did not know who he was.

8                If we look even further, Defendant Lt.

9    Parker, Lt. Parker has had, has been with the sheriff's

10   department since Anthony was only a year old.

11               Anthony, unfortunately, if you look at his

12   criminal history, you will see how much he has been

13   harassed by these departments and by these officers.

14               He was, on every little childhood prank, he

15   was imprisoned.  And that is also a basis of their

16   knowledge.

17               In fact, these officers continued to harass

18   him, and if it continues, this might be the subject for,

19   you know, a restraining order against them.

20               But what we're alleging is that they knew

21   him, they knew his history, and therefore, any kind of

22   information that they put forth that he was still

23   subject to the registry and the requirements of the SORA

24   was false and he knew they were false.

25               What they're trying to do is say we had

1   reliable information that we received from the Michigan

2   State Police, and therefore, we are not liable.  We are

3   not responsible.  And then the city Defendants say,

4   well, we relied on Parker, and therefore, we are not

5   responsible or entitled to rely on what Parker told us

6   as fellow law enforcement officials.

7          The problem with that is the law says, no,

8   you can't do that.  You cannot ignore information that

9   tells you otherwise.

10          And we have cited plenty of cases, and I

11   take issue with him saying that we have not cited cases

12   to say they're not entitled to rely on this information

13   because we cited a number of cases in our brief that

14   when an officer has information to indicate other than

15   what the information that is conveyed from a fellow

16   officer, then they are responsible for considering all

17   of the circumstances before making a probable cause

18   determination.

19          And what these officers did is bury their

20   heads in the sand and say, well, we're entitled to rely

21   on this information when they had information to let

22   them know otherwise.

23          Just to address a couple more points that

24   were raised.  Both City and County here argued facts

25   that should not be considered because we have not had a

1    chance to conduct discovery yet; and therefore, they

2    were going beyond what was in the pleadings, for

3    example, saying that Plaintiff Anthony Hart admitted

4    that he was required to register and he did not

5    register.

6              Not only is that not in the Complaint, we

7    don't concede that at all.  That is not an issue here

8    and that should not be considered here.

9              We believe that we can prove, we can prove

10   that they knew Anthony Hart was not subject to these

11   requirements and they proceeded to arrest and prosecute

12   him.

13             We ask and we are entitled to be able to

14   conduct discovery so that we can prove and present to a

15   jury facts by which they can determine that these

16   officers are liable because they knew and they lied.

17             In terms of what was raised, and I know it

18   was included and attached as a document to the City's --

19   I think it was a City's motion, a copy of the

20   Plaintiff's certified criminal history.  And Plaintiff

21   alleged the fact also and it was another indication

22   that, you know, if they ignored everything else, this

23   was something that told them this is wrong.

24             It is not that they needed to do any kind of

25   mathematical computation, that is not true.  What we're

1    saying is critical information was on there to alert any

2    reasonable officer that something is wrong here.

3              The issue that stands out, that jumps out at

4    you is the registry's end date that was listed as 2054.

5    That doesn't even make sense.  That doesn't even make

6    sense as the end date.  You have Tier I is required to

7    register for 15 years, Tier II for 25 years.  Where does

8    2054 come from?  It jumps out at you and any reasonable

9    officer would say, something is wrong here.  Even if

10   they wanted to and knowing everything else.

11             So it is not a reasonable mistake, it is not

12   anyone was negligent here.  It goes beyond that, and we

13   will be able to prove that, Your Honor.

14             I think the lastly the Monell issue, under

15   Monell, it's specifically the City that says that we can

16   not have, or really both of them say we do not have a

17   claim because we have not proven or we have not even

18   alleged a custom or policy.

19             Well, the Supreme Court has said that a

20   failure to train is a custom or policy and we have

21   alleged a failure to train.

22             To survive a motion for dismissal on failure

23   to train or failure to supervise, a plaintiff must show

24   a training or supervision was inadequate for the task

25   to be performed, that the inadequacy was the result of

1    deliberate indifference, and the inadequacy was closely

2    related to or actually caused the injury.

3              Now, what the Defendants are saying is that

4    we cannot prove a persistent pattern.  But that is not,

5    that is only one of two options that are indications of

6    liability here.

7              So a plaintiff can prove that the second

8    element of deliberate indifference in one of two ways.

9    One of them is by showing a failure to provide adequate

10   training in light of foreseeable consequences that could

11   result from a lack of adequate instruction or by showing

12   that they failed to act in response to repeated

13   complaints, and the Plaintiffs are alleging the second

14   one and that the municipality, the City and County

15   ignored.

16             We're saying that it's the failure to

17   provide adequate training in light of foreseeable

18   consequences.  They knew their officers were tasked with

19   information in the SOR.  They knew their officers were

20   going to come into contact with convicted sex offenders

21   or offenders that are required to register.  They knew

22   that the acts of their officers who were going to have

23   consequences on these members of the public.

24             And despite that knowledge, they did nothing

25   to properly train their officers to know when a

1   registered sex offender is no longer required to

2   register and in their failure to also supervise them

3   when they inadequately perform their tasks.

4              So we do have a viable failure to train

5   policy claim under Monell.

6              And even if, even if --  now, we did allege

7   sufficient facts to survive this motion and will be able

8   to prove liability of these Defendants, but even if this

9   Court decides otherwise and grants qualified immunity,

10  there will still be a case against the City and the

11  municipality.  And that case is cited in our brief --

12  I'm sorry, I'm not seeing it on my notes, but it is

13  cited in our brief that a city or municipality cannot

14  rely on the good faith of their officers to escape

15  liability under Monell.  And I would end there unless

16  Your Honor has any questions.

17             THE COURT:  I don't have any questions at

18  this time, but thank you for your argument.

19             Does anybody have any reply that argues

20  something they haven't already argued?

21             No?  Then I'll take your motions under

22  advisement and I will give you a written order.

23             (Proceedings concluded at 3:46 p.m.)

24                  *  *  *  *  *  *  *  *

25

```
 1              C E R T I F I C A T I O N
 2              I, CHERYL E. DANIEL, Official Federal Court
 3  Reporter, after being first duly sworn, say that I
 4  stenographically reported the foregoing proceedings held
 5  on the day, date, time and place indicated.  That I
 6  caused those stenotype notes to be translated through
 7  Computer Assisted Transcription and that these pages
 8  constitute a true, full and complete transcription of
 9  those stenotype notes to the best of my knowledge and
10  belief.
11              I further certify that I am not of counsel
12  nor have any interest in the foregoing proceedings.
13
14
15
16          /C/ CHERYL E. DANIEL,
17
18
19          CHERYL E. DANIEL,
20          FEDERAL OFFICIAL COURT REPORTER
21
22  DATED:  May 4, 2018
23
24
25
```